## APPEAL OF J. S. CULLINAN.

Docket No. 5914. Promulgated January 5, 1927.

1. The petitioner kept no itemized account of traveling expenses paid, but the amounts spent by him were in excess of the amounts repaid to him for traveling expenses. *Held*, that the petitioner derived no income from the repayments.

2. The petitioner acquired land and platted it into twenty-four lots. He gave away one lot, kept three for himself and sold seventeen in 1919, one in 1920, one in 1921, and one in 1922, one-fifth of the sale price being received in cash and vendor's lien notes being given for the balance. The Commissioner apportioned the total cost of the land and improvements to the twenty-four lots upon the basis of the assessed valuation of the lots and computed profits upon the sale of lots as being the difference between such allocated cost of each lot sold and the sale price. *Held*, that, in the absence of evidence as to a better method of determining the cost of each lot, the method used by the Commissioner is approved; *held, further*, that, in the absence of evidence that the cash value of the vendor's lien notes was less than their face value, the Commissioner's determination of profit is approved.

*John Walsh, Esq.*, for the petitioner.
*Ward Loveless, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income tax for the years 1919, 1920, and 1921, in the amounts of $79,364.67, $14,237.95, and $19,419.02, respectively, totaling $113,021.64. The petitioner alleges that the Commissioner erred (1) in adding to his

taxable income for the years 1919, 1920, and 1921, $9,000, $12,000, and $12,000, respectively, representing reimbursements by certain corporations of certain business expenses incurred and paid by him while engaged in business matters for the interests of those corporations but of which expenditures the petitioner did not keep an itemized statement; and (2) in adding to his taxable income for the year 1919 the sum of $119,983.89, alleged by the Commissioner to represent profit on the sale of real estate during that year.

### FINDINGS OF FACT.

The petitioner is a resident of Houston, Tex. During the years 1919, 1920, and 1921, he was president of American Republics Corporation; from February 25, 1919, to February 24, 1920, president of Galena-Signal Oil Co.; and from February 24, 1920, to the end of the year 1921, chairman of the stockholders' advisory committee of that company. He spent a large part of his time in performing executive duties for these companies. He received no salary. He made frequent trips from Houston to New York, lengthy stays in New York, and trips to other points, such as Washington, Franklin, Pa., and various other places. The corporation reimbursed him to the extent of $9,000 for the year 1919, and $12,000 for each of the years 1920 and 1921. The amounts of money which he spent on his trips were in excess of the amounts repaid. He attached to his returns a statement that he had received the repayments as reimbursements for expenses, but did not include the amounts as income or deduct the amounts from gross income as traveling expenses. The Commissioner has added the repayments to net income in determining the deficiencies.

In the year 1916 the petitioner purchased 36.9 acres of unimproved land in or near Houston, Tex., and in the year 1919 he purchased two adjoining fractional blocks of unimproved land, all of which was included in and constituted the real estate contained in a certain real estate development designated as " Shadyside," designed and carried on by the petitioner during the years here involved. In pursuance of this design, certain improvement and development work was undertaken and was being carried on before and extended through to 1920. Such work included, among other things, landscaping, grading, construction of sewers, paving, sidewalks, street lights, and water mains and facilities. During the year 1919 the petitioner caused the land to be platted into twenty-four lots and into thoroughfares and spaces for utilities, etc. He conveyed to three trustees all of the property except the platted lots, the property so conveyed being for the use and benefit of owners of lots.

During the year 1919 the petitioner "granted, sold and conveyed" seventeen of the lots to purchasers by written deeds in which there was expressly retained by the petitioner a vendor's lien. By the terms of such deeds the petitioner received in cash in the year 1919 one-fifth of the purchase price, the balance being represented in each instance by four promissory notes, bearing interest at the rate of 5 per centum per annum for equal principal amounts, maturing, respectively, in one, two, three, and four years after date. The seventeen lots were sold for a total consideration of $258,500. Lot J was conveyed to Craig Cullinan as a gift. Lots U, V, and K were reserved by the petitioner, and on lot U he built a residence. The total cost of the house and lot improvements was $253,000. The three remaining lots were sold subsequently, one in 1920, one in 1921, and one in 1922.

For the land the petitioner paid $135,030.05; the total cost of improvements was $93,353.79; and the total cost of land and improvements was $228,383.84. The Commissioner has computed a profit upon the sale of the lots in 1919 of $119,983.89, and has added this amount to net income of 1919 in determining the deficiency.

The cost of the land and improvements composing Shadyside Addition and the sales of lots therein are shown in the following statement:

*Cost of land and improvements.*

Purchases:

| | |
|---|---|
| Land, Feb. 7, 1916 | $119,925.00 |
| Land, Jul. 31, 1919 | 15,000.00 |
| Land, Nov. 29, 1919 | 105.05 |
| Improvements | 93,353.79 |
| Total cost | 228,383.84 |

*Disposition of lots.*

| Sold to. | Lot. | Year sold. | Sale price. |
|---|---|---|---|
| Harry Weiss | A | 1919 | $30,000 |
| D. D. Peden | C | 1919 | 30,000 |
| E. F. Woodward | D | 1919 | 30,000 |
| Mrs. R. L. Blaffer | E and H | 1919 | 27,000 |
| F. M. Law | F | 1919 | 13,500 |
| John Crotty | G | 1919 | 13,500 |
| Hugo Newhaus | I | 1919 | 13,500 |
| Henry Studer | L | 1919 | 8,500 |
| Mrs. W. B. Sharp | M, N, and O | 1919 | 25,500 |
| W. F. Farrish | Q | 1919 | 25,500 |
| Earl Wharton | P | 1919 | 12,750 |
| K. E. Womack | R | 1919 | 12,750 |
| F. O. Smith | S | 1919 | 8,250 |
| W. S. Moore | T | 1919 | 8,750 |
| Total sales | | 1919 | 259,500 |
| W. N. Long | W | 1920 | 12,000 |
| F. A. Heitman | B | 1921 | 31,800 |
| E. H. Buckner | X | 1922 | 15,340 |
| Total sales | | 1919–1922 | 318,640 |
| Gift to Craig Cullinan | Lot J | | |
| Reserved by petitioner | Lots K, U, and V | | |

The petitioner's books of account were kept on the cash receipts and disbursements basis.

OPINION.

SMITH: In his income-tax returns for the years 1919, 1920, and 1921, the petitioner did not include as income $9,000, $12,000, and $12,000, respectively, representing a partial reimbursement for expenses paid by him in connection with his duties as chief executive of two large corporations. Neither did he deduct from gross income any amount for expenses paid in connection with his activities as chief executive of the corporations. During the years in question he was continually engaged in rendering services to the corporations which, together with their respective subsidiaries, had offices and places of business located in the States of New York, Delaware, Pennsylvania, Ohio, Texas, Louisiana, Arkansas, and Oklahoma; and had offices in various cities in those and other States throughout the country. The petitioner maintained offices in the cities of New York, and Houston, Tex. In the course of rendering such services the petitioner was required to travel extensively throughout the United States, and particularly between Houston, Tex., New York City, Washington, D. C., Chicago, Ill., and Franklin, Pa. He kept no detailed accounts of his expenses. We are convinced by the evidence, however, that the amounts spent by the petitioner for traveling expenses exceeded the amounts paid to him by the corporations and that the petitioner derived no income from the repayments, and it was error on the part of the Commissioner to add the amounts to the reported net income.

The second assignment of error stated in the petition reads as follows:

The Commissioner erred in adding to taxpayer's taxable income for the year 1919 the sum of $119,983.89 alleged by the Commissioner to represent profit on sale of real estate arising out of a closed and completed transaction, but which transaction in fact was still executory in 1919, and the profit or loss to arise therefrom was speculative, incapable of definite ascertainment, and not realized by the taxpayer. Further the taxpayer alleges that no profit arose out of such transactions and operations during the year 1919, such as was and is contemplated and warranted by law as a proper subject for taxation; that by reason of the peculiar nature of the transactions, taxable profit could exist thereon only if, as and when, cash receipts exceed cost paid on the project as a whole; and that the apportionment of costs made by the Commissioner was discriminatory and unwarranted by law.

It appears from the copy of the deficiency letter filed with the petition that it is the contention of the Commissioner that the amount of $119,983.89 is the correct profit returnable as income in 1919 from the sale of lots, " for the reason that the cost of the lots was arrived at by taking the total amount assessed by the city and dividing that

amount by the total cost obtaining the percentage of assessment of your cost and increasing each lot accordingly."

The manner in which the petitioner's books of account were kept is shown by the following excerpt from his deposition:

Q. Are they [books of account] on a basis of cash receipts and disbursements?
A. Yes.

Q. What plan have you followed with reference to accounting for any profits that might exist for purposes of income tax?
A. All expenditures have been charged, all receipts have been credited, and the balance has been reported as a profit in the annual return. I mean when the receipts had exceeded the total expenditures.

Q. Have you ever attempted to determine the total definite cost of any specific tract or part of the Shadyside property as subdivided—the home sites in that addition? The tracts sold, for instance, have you ever determined the cost of that particular tract sold in any case?
A. I have not and have denied the right of anybody else to do so.

Q. Is it possible to do so?
A. I am not prepared to say. I want that point very distinctly emphasized—I oppose the right of the Government or anyone else to make such allocation of value.

Q. Do you, or not, now own the title to lots U and V in Shadyside?
A. I do, and K as well.

Q. Which two of these lots are considered as a part of your homestead improvements?
A. I occupy by building lot U, and have enclosed under hedge lot V as well.

Considering first the question of the determination of the cost of each lot sold, it is to be noted that section 213 of the Revenue Acts of 1918 and 1921 provide:

That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * or gains or profits and income derived from any source whatever.

If we understand the contention of the petitioner correctly, it is that he derived no income from his investment in Shadyside until he had received in cash $228,383.84, the actual cost of the land and improvements thereto, and that he is liable to income tax only in respect of the excess of the amount received from sales of lots over that amount. This is without regard to the fact that he made a gift to an individual of lot J, and retained for himself lots K, U, and V. Upon this reasoning, a person who purchased land for $1,000 and sold one-half of it for $1,000 obtained no profit from the transaction for the reason that he had not received anything in excess of the amount that he had paid for the land.

We think that the statute is not fairly susceptible of the construction placed upon it by the petitioner. If the petitioner sold a fractional part of the land purchased by him for more than the cost

of the entire tract, including improvements, his actual gain or income was, in our opinion, more than the excess of the sale price of the part sold over the cost of the entire tract. The Commissioner's regulations provide a method for determining the gain realized from the sale of a lot of land which is a part of a tract purchased for subdivision purposes. (Art. 43, Regulations 45 and Regulations 62.)

In this case the Commissioner has allocated the total cost of Shadyside Addition and improvements to the twenty-four lots carved out of the tract in accordance with the assessed value of the lots. The petitioner had advanced no method for determining the cost of the lots sold. In the absence of evidence as to a better allocation than that made by the Commissioner for the purpose of determining profit gained from the sale of the lots, the Commissioner's allocation is approved.

The petitioner kept his books of account on a cash receipts and disbursements basis. In such books of account he has not shown as income of the tax years involved any profits computed upon the selling price of lots over the cost thereof, upon the ground that the cash received was not in excess of the cost thereof, and that the vendor's lien notes were not to be regarded as having any cash value for income-tax purposes. In tax years subsequent to those involved herein the petitioner has shown as income the amounts collected in cash over the total cost of the subdivision. The question presented is, therefore, whether the petitioner derived any income from the sale of lots in the years 1919, 1920, and 1921, in view of the fact that only one-fifth of the sales price was paid in cash and the balance was represented by promissory notes payable over a period of four years from the date of sale, the actual cash collections for the three years presumably aggregating less than the total cost of the tract and improvements.

Section 212 of the Revenue Act of 1918 provides in part:

(a) That in the case of an individual the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214.

(b) The net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

Section 213 of the Revenue Act of 1918 provides:

That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits and income * * * of whatever kind and in whatever form paid * * *,

Section 202 of the same Act provides:

(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any \* \* \*.

The Commissioner has held that the petitioner's books of account kept in the manner indicated above do not clearly reflect his income and we are of the opinion that such is the case. We can not doubt that if the lots in Shadyside had been sold for cash, the excess of the cash received over the cost of each lot would have constituted income. A part of the consideration received, however, was in the form of negotiable, interest-bearing promissory notes. The Commissioner has computed the deficiency upon the basis that the notes were the equivalent of cash to the extent of their face value. We have no evidence that they did not have such value. In *Appeal of Aaron W. Wolfson*, 1 B. T. A. 538, 541, we stated:

The notes here involved were unconditional and negotiable. That such notes are property needs no discussion. Negotiable promissory notes are generally regarded by all courts as property, especially those of a responsible and solvent maker. Citation of authorities on this point is unnecessary. It is admitted by taxpayer that the maker and indorsers of these notes were each responsible and solvent. We are clearly of the opinion from the facts that the notes amounting to $130,000 were received by taxpayer as part payment for his interest in the partnership. The sale was a completed and closed transaction on September 20, 1919. This taxpayer completely and absolutely parted with every interest which he had in the partnership. There is no claim that the property (notes) received by taxpayer was not essentially different in character from the property parted with. The facts show there was an essential difference.

Since the statute specifically provides that property received in exchange for other property shall be regarded as the equivalent of cash to the extent of its fair market value, the Commissioner was correct in taking the notes into consideration in determining the gain or loss on the sale.

See also *Appeals of S. B. Churchill*, 1 B. T. A. 168; *E. Alice James*, 1 B. T. A. 548; *Marchetti Roma Cafe Co.*, 2 B. T. A. 529; *Sallie M. Wortham*, 3 B. T. A. 1307.

We think that the above cited decisions are controlling in this case.

Since the hearing of this appeal the Revenue Act of 1926 has been enacted, which provides for the computation of tax liability in a case such as is here presented on the installment basis, such method of reporting being optional with the taxpayer. (Section 212(d) and section 1208.) The question as to the computation of tax liability upon an installment basis is not before us.

*Judgment will be entered on 15 days' notice, under Rule 50.*