Oscar L. Bowman v. Commissioner. Oscar L. Bowman and Bertha Bowman v. Commissioner. Richard D. Bowman v. Commissioner. Richard D. Bowman and Dorothea Bowman v. Commissioner.
Bowman v. Commissioner
Docket Nos. 41809-41812.
United States Tax Court
T.C. Memo 1955-14; 1955 Tax Ct. Memo LEXIS 329; 14 T.C.M. (CCH) 46; T.C.M. (RIA) 55014; January 24, 1955
*329 Roger P. Stokey, Esq., Allan H. W. Higgins, Esq., 84 State Street, Boston, Mass., and Frederick J. Robbins, Esq., for the petitioners. Paul J. Henry, Esq., and Joseph Landis, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies: 50%
Docket
Fraud
No.
Year
Income Tax
Penalty
41809
1946
$ 6,942.49
$ 3,471.25
41809
1947
22,914.62
11,457.31
41810
1948
776.92
41810
1949
96.80
41811
1943
1,999.17
999.58
41811
1944
760.00
380.00
41811
1945
580.00
290.00
41811
1946
831.15
415.57
41811
1947
1,408.27
704.14
41812
1948
1,767.84
883.92
41812
1949
523.68
261.84
All fraud issues have been conceded by the Commissioner. The Commissioner also concedes there are no deficiencies in Docket No. 41811. After other concessions the remaining issues for decision are With respect to Dockets 41809 and 41810 1. Did petitioners have unreported income of $18,797.85 in 1946; of $40,659.27 in 1947; of $4,100 in 1948; and of $500 in 1949? 2. Is the deficiency for 1946 barred by the statute of limitations? With *330 respect to Docket 41812 1. Did petitioners have capital gains on the sale of real property which should have been taken into account in the respective amounts of $7,011.67 in 1948 and $2,509.76 in 1949? Findings of Fact General Findings Some of the facts have been stipulated, are so found and the stipulation is included herein by reference. Oscar L. Bowman (hereafter called petitioner) and Bertha M. Bowman are husband and wife. Richard D. Bowman is their son and Dorothea Bowman is his wife. The income tax returns in question were filed with the collector of internal revenue for the district of Massachusetts. Findings with reference to Dockets 41809 and 41810 Petitioner was born in Sweden in 1878. He was married in 1906 and resides with his wife in Beverly, Massachusetts. The couple has five children born in 1906, 1909, 1910, 1912, and 1920, all of whom lived with their parents until they reached adulthood. From about 1897 until 1910 petitioner worked in grocery stores and markets in Massachusetts cities. From 1910 to 1915 he owned stores of his own and at the end of that time he sold supplies to boats of Gulf Refining Company and New England Coal and Coke Company *331 at Beverly, Massachusetts. From 1915 to 1919 petitioner was a manager of a National Butchers Co. store in Salem, Massachusetts and from 1920 to 1929 he was a district manager for that company with six stores under his supervision. In 1929 he opened his own store in Salem. This store was operated in partnership with his sons Richard and Milton from 1931 to 1933, when it was incorporated. The corporation was dissolved in 1943, and since that time petitioner has operated the store as sole proprietor. Its business is that of retail provisions. He had income in each of the years 1919 through 1945 ranging from at least $2,500 to $7,600. During his boyhood petitioner learned the habit of thrift and the living habits of his family over the years have been on the frugal side. As a child petitioner received a gift of 20,000 Swedish crowns from his grandparents in Sweden which amounted to about $9,000 when turned over to him at the age of eighteen by an uncle. He later received a bequest of $5,000 from a man living in Providence, Rhode Island, who had befriended him when a boy. Together with these funds petitioner had accumulated by saving, approximately $79,000 in cash by January 1, 1946, which *332 he kept in a box hidden in his home. Throughout the years in question petitioner's only source of income, aside from small amounts of dividends, was the provision business which he operated. During the years 1946 through 1949, petitioner maintained the accounts of his store under the so-called National Cash Register Company system which involves the use of two books. One book was entitled "Daily Record of Cash, Sales and Money Paid Out." This book records on a daily basis all cash paid out, all cash received, cash sales, charge sales, amounts received on accounts, charge sales returns, refunds on cash sales, and total sales. This book contains summary pages whereby all of said cash and sales transactions are summarized on a monthly basis and also on a yearly basis. The books now available start with July 22, 1946 for the year 1946 and contain a monthly summary for the entire year. The books for the years 1947 through 1949 are complete. The Section B book is entitled "Daily Record of Classified Disbursements." This book records on a daily basis all cash paid out, deposits in bank account, checks drawn, and a description of all disbursements both as to accounting classification and *333 identity of the recipient of each payment. This book also contains summary pages whereby all disbursements are summarized on a monthly and a yearly basis. The books now available start with August 19, 1946 for the year 1946 and do not contain a monthly summary for the entire year. The books for the years 1947 through 1949 are complete. Petitioner's books above referred to show his total net cash and charge sales for the year 1946 to be $88,224.05, which amount was reported as total receipts of his retail provision business in his 1946 income tax return. These books show petitioner's total net cash and charge sales for the year 1947 to be $139,412.48, which amount was reported as total receipts of his retail provision business in his 1947 income tax return. Petitioner's books above referred to show his total net cash and charge sales for the year 1948 to be $140,120.80, which amount was reported as total receipts of his retail provision business in the petitioner's 1948 income tax return. The books show petitioner's total net cash and charge sales for the year 1949 to be $129,496.04, which amount was reported as total receipts of his retail provision business in the petitioner's *334 1949 income tax return. In addition to the National Cash Register system books, the store maintained during all of the years in question complete cash journals, an accounts receivable ledger, checkbooks, and subsidiary invoice books. All these books and records were introduced in evidence by the petitioner. During all of the years in question all of the books of the store were kept by an experienced bookkeeper who is no relation to petitioner and who has not been employed by petitioner since 1950. All of the purchases, sales, and all receipts and disbursements of the store were accurately recorded in the books during all of the years in question. Although no inventory ledger was maintained by the store, a physical inventory was taken by petitioner at the end of each year; and such inventories were reported on the petitioner's income tax return, and were properly reflected in the computation of the income of the store for each year. The petitioner's income tax return for each year in question was prepared by a certified public accountant. The returns were prepared by the accountant on the basis of the books and records specified above which were maintained by the bookkeeper. *335 The store books were kept and income was reported on an accrual method of accounting at all times relevant to these proceedings. However, several items were not treated by petitioner on this method. They were: (1) Waste fats and bones. In the operation of the provision business waste fats and bones are the residue from meat purchased for sale. During the years in controversy certain of the proceeds from the sale of this residue was turned over to petitioner's son Richard who worked in the store. The bone income was not recorded on the books and was not deducted as an expense of the business. The amounts turned over to Richard were to some extent used to defray expenses such as gas, oil, and meals while he was engaged in driving a vehicle on store business. The amounts involved in the sale of bones and fat have been stipulated. These amounts were income of petitioner in the amounts stipulated for the respective years. Of the amounts turned over to Richard, $240 in each of the years 1946, 1947, 1948, and 1949 were proper business expenses of petitioner. (2) Meat purchases. On July 26, 1946, petitioner made two purchases of meat from Benson Bros. Corporation in the total amount *336 of $13,038.90, which meat was stored by him in a warehouse in Boston, Massachusetts, until needed at the store. The meat so purchased was paid for in cash by petitioner in 1946 at the time of purchase. Petitioner later drew checks on the store to reimburse himself for the above meat purchases. The checks drawn and the amounts thereof are as follows: Charge to
Payments to
Merchandise
Date - 1946
O. L. Bowman
Purchased
September
$ 1,496.40
$ 1,496.40
October
1,501.04
1,501.04
October
1,502.20
1,502.20
October
1,502.78
1,502.78
October
1,515.54
1,515.54
November
1,506.41
1,506.41
December
869.27
869.27
$ 9,893.64
$ 9,893.64
1948
November
3,600.00
3,600.00
Total
$13,493.64
$13,493.64
The purchases account of the store was charged with the above purchase of meat only at the time petitioner was reimbursed for such purchase. These purchases of meat were delivered to the store in 1946. The fact that petitioner was reimbursed for $455 more than the initial purchase price, as set forth above, is explained by costs, including handling charges paid for by petitioner. (3) Cash withdrawals. During the years in question in these proceedings, *337 petitioner drew checks on the store checking account for his personal account and made cash withdrawals in the following amounts: Year
Amount
1946
$ 6,294.58
1947
9,762.92
1948
10,981.21
1949
8,597.08 All of the cash withdrawals and certain of the check payments were charged to the personal account of petitioner on the books of the store. Other check payments appear only in the checkbook and cancelled checks of the store. Those checks not charged to the account of the petitioner were paid for in full by the petitioner at the time. All checks for petitioner's benefit were either paid for by him or charged to his personal account. None of the above amounts were claimed as deductions in the computation of the business income of the store. The personal charges paid by check, which were not shown as charges to the personal account of the petitioner on the books, involved household bills paid from the store's checking account for petitioner's convenience. Petitioner had no personal checking account of his own at the time. Petitioner reimbursed the store from his own cash for all of such personal check payments so that there was no net withdrawal of funds from the *338 store as a result of such check payments. Where petitioner did not reimburse the store for personal payments, they were always charged on the books to his personal account. During the taxable years petitioner made cash loans and gifts to his son Richard as follows: Year
Loans
Gifts
1946
$13,250.00
$7,697.44
1947
30,000.00
4,217.47
1948
3,600.00
He also made a cash loan of $8,870 to his son Milton in 1947. The deficiencies for 1946 and 1947 set forth in the opening statement herein were based on a report of examination which explained the adjustments as follows: "1946 Unallowable deductions and additional income: a. Additional Income
Income not previously re-
ported
$15,000.00
b. Merchandise Purchased
Checks erroneously charged
to merchandise purchased
3,297.85
c. Food
Estimated cost of food
used for personal con-
sumption
500.00
Total addition to taxable in-
come
$18,797.85
"1947 Unallowable deductions and addi-
tional income: a. Additional Income
Income not previously re-
ported
$39,290.00
b. Merchandise Purchased
Checks erroneously charged
to merchandise purchased
869.27
c. Food
Estimated cost of food
used for personal con-
sumption
500.00
Total addition to taxable
income
$40,659.27"
*339 The deficiencies for the years 1948 and 1949 were explained as follows: "1948 Unallowable deductions and additional income: a. Merchandise Purchased
Check made payable to
Oscar L. Bowman and
charged to merchandise,
but the check is deposited
to the bank account of
Richard L. Bowman, son
of Oscar L. Bowman, and
the expense therefore dis-
allowed
$ 3,600.00
b. Food
Estimated cost of food
used for personal con-
sumption
500.00
Total addition to taxable
income
$ 4,100.00
"1949 Unallowable deductions and additional income: a. Food
Estimated cost of food
used for personal con-
sumption
$ 500.00"
At the hearing of these proceedings, without amendment to the pleadings, the Commissioner abandoned the above adjustments for the taxable years and now relies on a net worth computation to sustain his determination of unreported income. The following is a comparison of the unreported income as determined in the statutory notice and as shown in the net worth statement: Total additions
Unreported
to income per
income by net
statutory notice
worth method
1946
$18,797.85
$31,063.65
1947
40,659.27
50,945.94
1948
4,100.00
922.42
1949
500.00
2,050.75
*340 In the taxable years net income was reported as follows: 1946
$3,003.20
1947
9,594.68
1948
5,190.16
1949
7,692.70
The return for 1946 was timely filed. The statutory notice for 1946 was sent to petitioner on March 11, 1952. Opinion The Commissioner determined the deficiencies here in question on the basis of certain items of "unallowable deductions and additional income." At the hearing this method of determining the deficiencies was abandoned and reliance was placed on the net worth method instead. This shift in position was explained by counsel in response to a question by the Court "* * * it happens the agents did set this case up with the specific items and their reports which I can show your Honor they are corroborated by a net worth statement and on an analysis of the case it became the opinion of the Appellate Division and my opinion that the corroboration was better than their specific items, so for the purpose of trial we set it up on a net worth basis." Petitioner contends that it was improper to receive in evidence computations based on net worth and further, that if such computations are permitted to be introduced, at least the burden *341 of proof is thereby shifted to the Commissioner. We do not agree with either contention. The basic issue, which is whether petitioner had unreported income and the amount thereof, remains the same in any event. No increased deficiency has been asked by the Commissioner. He has simply changed the theory of his determination. The net worth computations are based for the most part on stipulated figures. Whether they are sufficient when considered along with the prima facie correctness of the Commissioner's determination, in the face of other evidence of record, to sustain the determination is another matter. Cf. Morris Lipsitz, 21 T.C. 917. The net worth computations were properly received in evidence and the burden of proving error in the Commissioner's determination remained with petitioner. We think petitioner has met this burden and except for certain items which will be referred to below, we think income has correctly been reported on the returns in question. It has been stipulated that aside from a small amount of dividends, petitioner's only source of income was his provision business. All of the books and records of that business, with the minor exception noted *342 in our findings, are in evidence. The method of keeping books and of preparing the tax returns has been explained by qualified witnesses. No fraud is claimed, no major discrepancies in the books have been disclosed, and unless we accept unqualifiedly the net worth computations as proving unreported income, the Commissioner's determination has been successfully attacked. As stated above, most of the net worth items have been stipulated. However, petitioner assails the Commissioner's computation principally on the ground that it does not adequately account for beginning cash on hand. In this respect the net worth statement recognizes only comparatively small amounts carried in petitioner's savings accounts. Petitioner, on the other hand, testified to the accumulation of approximately $79,000 in cash through savings over his considerable lifetime of gainful employment coupled with gifts and bequests of some $14,000. On this point the question is principally one of credibility. Petitioner alone testified as to this accumulation. At the time of the hearing he was 76 years old. His testimony necessarily covered events extending over a period of approximately 50 years. We carefully observed *343 his demeanor while testifying and have given extended consideration to his testimony in the light of inconsistencies claimed to have been developed on cross-examination and of the contended for improbability of his story. In our opinion, petitioner's testimony was credible and we have found as a fact that on January 1, 1945, he had saved and accumulated the cash hoard as he testified he did. If he had not, there is no other plausible explanation for the considerable amounts of cash gifts and loans which he made to his sons or the source of the more than $13,000 in cash which he advanced at one time for the purchase of meat. We are unable to believe that the provision business produced these large amounts of cash during the years in question. The recent decisions of the Supreme Court, Smith v. United States, 348 U.S. 147; Holland v. United States, 348 U.S. 121; United States v. Calderon, 348 U.S. 160; and Friedberg v. United States, 348 U.S. 142 contain extended discussions of the care which must attend the use of the net worth method of computing income in tax cases. Accepting, as we do, petitioner's testimony that he had cash on *344 hand amounting to some $79,000 at the beginning of the period here involved, and after consideration of all the other evidence of record we believe the net worth computations made in this case by the Commissioner to be unreliable. From the entire record we conclude that petitioner properly reported his income for the taxable years in all respects except with reference to the amounts relating to waste bones and fat and the treatment given to the meat purchase for cash in 1946, and petitioner's reimbursement therefor in 1946 and 1948 as shown in our findings of fact. Those findings and the stipulated facts with respect to those items should enable the parties to make proper adjustments in a Rule 50 computation. On the statute of limitations issue respondent contends that the deficiency for 1946 is not barred because petitioner omitted from gross income an amount in excess of 25 per cent of the amount of gross income stated in the return. Whether this is so can be determined in the Rule 50 computation. If the computation shows he did not omit an amount in excess of 25 per centum of the gross income stated in the return the deficiency is barred by section 275(c) of the Internal Revenue *345 Code of 1939. Findings of Fact - Docket 41812 On December 15, 1947, Richard D. Bowman (hereafter called petitioner) purchased adjoining properties known as 5 Palmer Street, a residence, and 173 Lafayette Street, an apartment building, in Salem, Massachusetts, for a total consideration of $55,000. The purchase and sale agreement made no allocation of the purchase price between the two parcels. The parcel at 173 Lafayette Street had been offered to petitioner shortly before December 15, 1947, for $45,000. Petitioner was told the two properties had to be sold together to "clean up" an estate and that the residence could readily be resold for $12,500. Petitioner did not want the residence property but was interested in the apartment. After purchasing both in the lump sum transaction he resold the residence property within two weeks for $12,500, paying a $500 commission. On his return, petitioner reported his cost basis for the residence property as $12,000. The Commissioner determined the cost basis of the property to be $8,866 on the relationship which the assessed valuations of each of the two properties bore to their total assessed valuation. Petitioner's cost basis for the property *346 at 5 Palmer Street was $9,500. On December 1, 1947, petitioner purchased adjoining properties in Lynn, Massachusetts, known as 34 Park Street; and 6-8, 10-12, 14-16 and 20 Bennett Circle for a total unallocated consideration of $45,000. On March 2, 1948, petitioner sold the house located at 20 Bennett Circle for $9,500 with a sales' expense of $475. In his determination of deficiency the Commissioner used a cost basis for this property of $5,180. Petitioner claimed a cost basis of $9,025. Petitioner sold the house at 34 Park Street on May 10, 1949, for $13,500 with a sales' expense of $675. Petitioner claimed a cost basis of $12,444 for the property. The Commissioner determined a cost basis of $13,715. In determining the gain and loss on 20 Bennett Circle and 34 Park Street the Commissioner treated as the respective costs of the properties amounts arrived at by applying the assessed value of the five pieces of property purchased in the lump sum transaction to the lump sum purchase price. The accountant who prepared petitioner's 1948 and 1949 tax returns computed the adjusted cost of the property at 20 Bennett Circle on the basis of his opinion as to the price paid for it by petitioner, *347 based on the price for which it was sold within three months from the date of purchase. The accountant computed the adjusted cost basis of the remaining properties by applying the ratios of their assessed values to the balance of the total cost of such properties after subtracting the cost of the property at 20 Bennett Circle. In 1938 petitioner acquired a house in Wenham, Massachusetts, for $4,500 which he sold on May 21, 1949, for $11,000. In the interim between the purchase and sale improvements were made to the house consisting of insulation, stairways, porch and a fireplace. The cost of these repairs was $1,200. Petitioner's cost basis of the Wenham property was $5,700. Opinion Several of the adjustments made by the Commissioner in Docket No. 41812 have not been pressed and are treated as abandoned. The primary question left is properly to allocate the amount of the lump sum purchase price of several pieces of property among the various parcels for the purpose of determining the cost basis of the parcels resold by petitioner. With reference to the property known as 5 Palmer Street we have found the cost basis to be $9,500. This finding was made after taking into consideration *348 the offer made shortly before the date of purchase for the other parcel involved in the transaction. For the other properties; i.e., 34 Park Street and 20 Bennett Circle, we approve the Commissioner's determination in the absence of anything proposed by petitioner which we could consider a better allocation than that made by the Commissioner. J. S. Cullinan, 5 B.T.A. 996. Turning to the Wenham property, we have found its cost basis to be $5,700. In his determination the Commissioner allowed a credit of $591 for improvements. We think that sufficient evidence has been introduced to support an expenditure of $1,200 for the claimed improvements and have so found. The Commissioner has conceded there are no deficiencies in Docket No. 41811. Decision will be entered for the petitioner in Docket No. 41811. Decisions will be entered under Rule 50 in Docket Nos. 41809, 41810, and 41812.