## UNITED STATES *v.* CALDERON.

No. 25.   Argued October 21, 1954.—Decided December 6, 1954.

*Assistant Attorney General Holland* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Marvin E. Frankel, Ellis N. Slack, David L. Luce, Joseph M. Howard, Fred G. Folsom* and *Dickinson Thatcher.*

*Joseph W. Burns* and *Norman Herring* argued the cause and filed a brief for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

The issue in this case is similar to the question presented in *Smith* v. *United States, ante,* p. 147, on the corroboration of respondent's extrajudicial statements concerning his "opening net worth." The admissibility of these statements is not questioned.

Respondent, an operator of a legitimate coin-machine business, was tried and convicted on four counts charging him with willful attempts to evade and defeat his own and his wife's income taxes for the years 1946 through 1949. The Government's case rested primarily on a net

worth computation, which showed net worth increases and nondeductible expenditures of $62,993.47 for the prosecution period; during these same four years respondent declared only $16,775.14 income. It was stipulated that the computation was correct except as to the items "cash on hand" and "cash in bank." Respondent's bank balances were proved by introducing the bank records, and, with some minor adjustments, the Government's net worth computation was amply verified in this respect. As to "cash on hand," particularly the amount credited to the taxpayer as of the beginning of the prosecution period, respondent contends that the only evidence tending to substantiate the Government's figures is the uncorroborated admissions of the accused. He argues that lacking independent evidence of the *corpus delicti*, the conviction cannot stand. The Court of Appeals agreed and reversed the judgment of conviction, observing that, absent a starting item such as cash on hand, "the remainder of the statement proves nothing." 207 F. 2d 377. We granted the Government's petition for certiorari. 347 U. S. 1008.

The Government credited the respondent with $500 cash on hand at the starting point. One of the Government agents testified that the $500 figure was an approximation based on respondent's oral answer to a request that he estimate his year-end balances of cash on hand. According to the agent's notes, respondent replied that he had "approximately $500.00 cash in his pocket. He believes that because it is his habit to carry about that much money in his pocket at all times." It was admitted that the taxpayer might have had more than this amount on hand at certain times, since he had frequently made deposits in his bank accounts in sums of $1,000 and $2,000. It appears that the agent did not inquire into how much money respondent had in his safe or his business, as opposed to the funds in his pocket, maintaining

that he was justified in treating the taxpayer's statement regarding the $500 as covering his total cash on hand. Respondent contended that this figure failed to embrace a substantial sum in currency in his safe at the starting date. Both the Government and the respondent adduced a number of circumstances in support of their respective positions, and in interpreting the meaning of respondent's statement the jury could readily have found the Government's circumstantial proof more persuasive. In our view, it could have concluded from the evidence that respondent's statement as to the $500 referred to his total cash on hand at the starting point.

Respondent also signed a written statement admitting to the same opening cash on hand. This document contained the over-all net worth computation relied on by the Government at the trial. The Government's evidence tended to show that it had been signed by the respondent after the usual warning and after he and the agents had worked over the statement, item by item, for some eight hours. Though admitting that both he and his accountant had read the statement, the respondent sought to prove that he had not understood the net worth computation as a whole or the individual item of "cash on hand"; that before signing the statement he had asked his accountant whether it was correct, intending to rely on the latter's judgment; and that the accountant, in giving defendant the go-ahead, had merely approved the method employed in compiling the statement without passing on the accuracy of the particular figures. Again it was for the jury to consider all these circumstances in determining the weight to be given the signed statement; we cannot say that the document should have been rejected as a matter of law.

But all these factors are relevant in determining whether the independent evidence provided adequate corroboration. As in *Smith* v. *United States,* the circum-

stances surrounding defendant's admissions cast some doubt on their reliability. The statements were made by a taxpayer anxious to cooperate with the Government in the hope of limiting civil liability and avoiding criminal prosecution. The oral statement, with its "in the pocket" terminology, is certainly not clear. And the Government's own witness, the respondent's accountant, testified that he had not verified the particular figures in the written statement when it was referred to him by respondent. Under these circumstances, the trial judge and reviewing courts should exercise great care in determining whether the statements of the accused were corroborated. The reviewing courts, however, can seek corroborative evidence in the proof of both parties where, as in this case, the defendant introduces evidence in his own behalf after his motion for acquittal has been overruled. Cf. *Bogk* v. *Gassert,* 149 U. S. 17.[1]

Unlike *Smith,* there is not sufficient evidence here of the taxpayer's financial history to substantiate directly the opening net worth. Proof that the taxpayer was impoverished by the depression, that he was working for his meals and $8 a week in 1935, is too remote, absent proof of the taxpayer's financial circumstances in the intervening years. The respondent entered the coin-machine business in a modest way in 1935; he discon-

---

[1] By introducing evidence, the defendant waives his objections to the denial of his motion to acquit. *Lii* v. *United States,* 198 F. 2d 109; *Leeby* v. *United States,* 192 F. 2d 331; *Gaunt* v. *United States,* 184 F. 2d 284; *Mosca* v. *United States,* 174 F. 2d 448; *Hall* v. *United States,* 83 U. S. App. D. C. 166, 168 F. 2d 161. His proof may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation, *Ladrey* v. *United States,* 81 U. S. App. D. C. 127, 155 F. 2d 417, or provide corroboration for essential elements of the Government's case, *United States* v. *Goldstein,* 168 F. 2d 666; *Ercoli* v. *United States,* 76 U. S. App. D. C. 360, 131 F. 2d 354.

tinued his low-paying job in 1939; and, except for a short period during the war, he devoted his entire efforts to his coin-machine business until 1945, when he began to operate a café as well. The only evidence of defendant's fortunes between 1935 and 1946, the first prosecution year, consists of his tax returns for 1944 and 1945 and some meager evidence with regard to his tax returns for 1941, 1942 and 1943. The latter apparently was obtained from the respondent, and, standing uncorroborated, cannot serve to corroborate respondent's other admissions. The 1944 and 1945 returns show net taxable income of $4,162 and $7,328 respectively, with gross receipts from the coin machines of $9,266 and $10,302. This sketchy background can hardly give rise to an inference that defendant had no more cash at the starting date than the Government gave him credit for.

Accordingly, we must search for independent evidence which will tend to establish the crime directly, without resort to the net worth method. There are several evidentiary strands which merit inspection, the first of which is very similar to one employed in *Smith.* We held there that an inference of tax evasion could be based on the fact that the taxpayer's visible assets greatly increased at a time when he was receiving unrecorded amounts of taxable income. In *Smith* v. *United States,* the taxpayer kept no records. Here the records were shown to be incomplete. Receipts from the coin machines were tabulated from a number of receipt books covering various locations. The receipt books were not numbered; the taxpayer was unsure of how many machines he had in operation; and there was considerable concern about receipt books being lost or misplaced. The loss of one receipt book would make a difference of from $1,000 to $1,500 in income. Eventually, on the advice of his accountant, respondent began to number the

166

books.[2]   But, even after this safeguard was employed, unnumbered books continued to appear—and then disappear; two were lost, and subsequently recovered, in a period of three or four months.   A system of recording receipts which rests on so unfirm a foundation hardly places the respondent in a very different class—for this purpose—than the taxpayer who keeps no books at all. Both are receiving unrecorded amounts of income.

The increase in respondent's visible assets is considerably less than the increase presented in the *Smith* case. There the increment over a four-year period amounted to more than $196,000; the taxpayer's declared income was less than $17,000; and his average personal living expenses were $3,500 a year.   In this case, also over a four-year span, the figures are: increase in visible assets (excluding the cash item), $47,594; declared income, $16,775; living expenses, $3,000 yearly (plus some $1,900 in other nondeductible expenditures).   The increase, though less than in *Smith,* is far from insubstantial.   While reporting income only $4,775 in excess of his living expenses, the taxpayer increased his bank balances by over $16,000; added $1,000 to his holdings of United States Savings Bonds; increased his investments in land and buildings by over $9,000; and poured some $22,000 net additional capital into his business.   These increments, when considered in the light of respondent's receipt of unrecorded amounts of taxable income, are sufficiently at variance with his reported income to support an inference of tax evasion.   The inference is buttressed in this case by the peculiar relation between the reported gains from respondent's coin-machine business and his investments in new equipment.   In three of the four prosecution years the respondent reported a net loss on his coin-machine

---

[2] It is not clear from the record whether this numbering began during or after the prosecution period.   Compare R. 130–131 with R. 177–178.

operation, and in the fourth a net gain of only $1,330. During the same period he made gross investments in new equipment totaling $37,555. The jury could readily find defendant's investment policy inconsistent with his claimed losses. Furthermore, although respondent contends that the war years marked the peak of his business activity and that his apparent postwar increases came from profits accumulated during that period, it was not until 1947, the middle of the prosecution period, that his business became sufficiently large to require the full time of his accountant. We hold that the financial history of respondent and his business during the prosecution years provides sufficient independent evidence of the crime of tax evasion to corroborate his statements concerning cash on hand.

Even more conclusive corroboration, however, is respondent's testimony at the trial that he had $16,000 or $17,000 cash on hand at the starting point. This conflicted with the statements being corroborated ($500) and respondent's testimony at a prior trial ($2,000 to $9,000), but for the purpose of independently establishing the crime charged the jury could accept this testimony. Respondent further testified that he had $3,000 or $4,000 in cash at the end of the prosecution period. Taken together with the remainder of the net worth statement, which was stipulated or independently established, this testimony establishes a deficiency in reported income of more than $30,000.[3] There could hardly be more conclusive independent evidence of the crime.

---

[3] The Government's net worth computation, based on $500 cash on hand at the outset and $1,971.50 on hand at the conclusion of the prosecution period, yields a four-year net worth increase (with expenditures) of $62,993—$46,218 in excess of declared income. Eliminating the cash items from the net worth statement, the deficiency is reduced by $1,471—to $44,747. If the defendant's testimony is accepted, of $17,000 cash on hand at the beginning and $3,000 at the end, the deficiency must be reduced by another $14,000, leaving $30,747.

But one problem remains. The $17,000 hoard of cash could have absorbed the computed income deficiency for one or more of the prosecution years,[4] and respondent was convicted on all four counts. It might be argued that independent evidence showing a $30,000 deficiency is not enough—that there must be evidence that this sum resulted in a deficiency for *each* of the years here in issue. There is no merit in this contention. In the first place, this evidence is merely *corroborating* respondent's cash-on-hand admissions and need not comply with the niceties of the annual accounting concept. While the evidence as a whole must show a deficiency for each of the prosecution years, the corroborative evidence suffices if it shows a substantial deficiency for the over-all prosecution period. Independent evidence that respondent understated his income by $30,000 in the same four-year period for which respondent's extrajudicial admissions tended to show a $46,000 deficiency is adequate corroboration. It provides substantial evidence that the crime or crimes of tax evasion have been committed; the corroboration rule requires no more. Second, there is evidence in this case which tends to negate the possibility that the alleged $17,000 hoard could have absorbed the deficiency for *any* of the prosecution years. This money supposedly went toward the purchase of equipment in 1946 and early 1947. Almost $16,000 in equipment was purchased in 1946; this accounts for nearly all of the cash hoard and still leaves a deficiency in 1946 of over $5,000 in unreported income.[5] The funds which remain are insufficient to absorb the income deficiencies of any subsequent prosecution years.[6]

As we said, the circumstances surrounding respondent's admissions create considerable doubt as to their reliabil-

---

[4] The computed deficiency for 1947 was $7,393, and for 1948, $3,284.

[5] The computed deficiency for 1946 was $21,019.

[6] See notes 3 and 4. The computed deficiency for 1949 was $14,523.

ity. We have therefore examined the independent evidence with great care to insure that the accused will not be convicted on the basis of a false admission alone. Although the evidence was insufficient to corroborate the opening net worth directly, we find the independent proof of tax evasion entirely adequate. Accordingly, the decision of the Court of Appeals setting aside the conviction is

*Reversed.*

MR. JUSTICE DOUGLAS dissents.