Jacob STRAUCH, Appellant,
v.
UNITED STATES of America,
Appellee.

Alex STRAUCH, Appellant,
v.
UNITED STATES of America,
Appellee.

Harry Benjamin SHER, Appellant,
v.
UNITED STATES of America,
Appellee.

Nos. 11992, 11993, 11994.

United States Court of Appeals
Sixth Circuit.
June 13, 1955.

---

Bernard J. Long, Washington, D. C., argued, John J. Hooker, Nashville, Tenn., Bernard J. Long, Washington, D. C., on the brief, for appellants.

Marvin E. Frankel, Special Asst. to the Atty. Gen., argued, H. Brian Holland, Ellis N. Slack, John H. Mitchell, Marvin E. Frankel and Richard B. Buhrman, Washington, D. C., Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

The judgments in these consolidated cases, Strauch v. United States, 6 Cir., 213 F.2d 805, were vacated by the Supreme Court of the United States in its order of January 10, 1955, 348 U.S. 905, 75 S.Ct. 311, and remanded to this court for re-examination in light of the opinions of the United States Supreme Court in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186.

Examination has been made of the record and contentions of counsel in light of the above decisions and in each case the court adheres to its original conclusion. While testimony was introduced under the net worth method against Jacob Strauch and under the bank deposit method as to all three defendants,[1] in each case ample independent evidence was presented sustaining the convictions.

Jacob Strauch was charged with evasion of income taxes in an indictment which contained three counts covering the taxable years 1944, 1945, and 1946. The jury found him guilty under all three counts and the separate sentences under each count were ordered to run concurrently. Alex Strauch and Harry Sher were each charged in an indictment containing two counts covering the taxable years of 1944 and 1945. Each defendant was found guilty under both counts and the separate sentences imposed under each count were ordered to run concurrently. If the conviction under any one count is valid as to each defendant, the sentence must be sustained.

During all the period involved Jacob Strauch conducted a wholesale jewelry business of his own and also was a member of the partnership of Strauch & Sher, the other two members being Alex Strauch and Harry Sher. Strauch and Sher conducted a wholesale jewelry business from 1943 to 1946. The government presented evidence to the effect that the partnership made profits of over $100,000 during this period and all three partners in a written statement executed December 12, 1949, declared that the taxable income of the partnership during this period was over $90,000. During the entire period of the partnership it filed no return of partnership income. Jacob Strauch filed no return for 1944 showing income from the partnership, and filed no return whatever for 1945.

[1.] In order to avoid confusion the defendants will be denominated by their individual names.

As to Count I in the indictment against Jacob Strauch, which covers the calendar year of 1944, the government showed by direct evidence taken from the partnership books that $19,859.80 was received by Jacob Strauch from the partnership in 1944. The balance of unreported income for this year, $2,674.02, was proved by the bank deposit method. For this year of 1944 Jacob Strauch reported income of $9,478.94.

Count II of the indictment against Jacob Strauch charges willful evasion of income tax in 1946, by willful failure to file income tax return for 1945. Jacob Strauch's net taxable income for the year 1945 was shown to be $49,018.91. Of this amount $14,008.93 was proved by direct evidence taken from the books of the partnership and some $800.00 by proof of Jacob Strauch's income from dividends and capital gains.

The balance of $34,159.98 was proved by reconstructing Jacob Strauch's gross income from his sole business on the bank deposit method allowing deductions for cost of goods sold and expenses as shown by Jacob Strauch's records, cancelled checks, and other evidence.

As to Count II of the indictment Jacob Strauch contends that since he filed no income tax return for 1945 he merely omitted an act required under the statute, namely, the filing of a return, and cannot rightly be found guilty of fraudulent evasion of income tax. However, ample evidence of affirmative, fraudulent acts was presented justifying the verdict as to Count II. Jacob Strauch made false statements to agents investigating the case, declaring that there were no books or records of the partnership, that these records were periodically destroyed. They were, however, in existence and formed the basis of the reconstruction of the partnership net income for the years involved of from $90,000 to $100,000. Jacob Strauch kept no books in his individual business, handling most of his transactions in cash. He was a partner in a firm which filed no return. He filed a declaration of

estimated tax for 1945 in the amount of $1,214.97, although the correct liability was about $25,000.

As to the evidence under Count III the computation of Strauch's unreported income for 1946 was made up from an analysis of his bank deposits. He reported $16,922.27. The additional amount estimated was $18,078.09. Jacob Strauch told the investigator that the origin of his bank deposits was "receipts from the sale of jewelry" in the form of checks and cash going directly into the bank account or first put in his safe and then deposited in the bank. He stated that no money constituting non-business receipts such as gifts, insurance proceeds, or prior accumulations of money went into the bank account. The deposits during 1946 were made at regular intervals, never less than 5 and never more than 11 in one month. The government agent carefully eliminated from the estimate the proceeds of loans, of capital transactions, deposits representing income from interest and dividends, and amounts drawn from the partnership. Between 1939 and 1949 Jacob Strauch made loans at his bank totalling $8,000. In 1940 he filed a financial statement with the bank, listing a total net worth of $29,039. In 1942 he reported net income of $4,420.38 and in 1943 $5,218.36, yet in 1944 and 1945 his bank deposits were about $106,000 in excess of reported gross income. These circumstances constituted substantial independent evidence sustaining the government's estimate based upon bank deposits.

On November 7, 1946, Jacob Strauch made a sworn statement that his net worth for the taxable year ended November 1, 1946, was $113,043.99. The pattern of Strauch's accounts and his course of conduct during the period involved entitled the jury to take into consideration his admission as to net worth in connection with other evidence as to amounts of unreported income presented by the government. These circumstances corroborate the admissions of Jacob Strauch and his statements that

his bank deposits reflected income. United States v. Calderon, supra, 348 U.S. 168, 75 S.Ct. 186; Smith v. United States, supra, 348 U.S. 158, 159, 75 S.Ct. 194.

The convictions of Alex Strauch and Harry Sher each involved charges of evasion of income tax with reference to the years 1944 and 1945, for which years no partnership return was ever made. The written statement heretofore referred to made by the partners December 12, 1949, listed in detail the total receipts of partnership income for the taxable years together with the total expenses and costs of sales. This statement with its calculation of over $90,000 profit for the years 1943 to 1946 was corroborated in every essential by the books of the partnership. By defendants' written admission about 90% of the profits of the enterprise was realized in 1944 and 1945. The books which were made up *ante litem motam* fully corroborated the admissions. Warszower v. United States, 312 U.S. 342, 61 S.Ct. 630, 85 L.Ed. 876.

The government agent testified that "some five" sets of books, single entry journals, which listed sales and expenditures of the partnership were used in calculating the net earnings of the partnership during the taxable years. No books recording capital accounts or distribution of profits were found. For 1945 there was a book marked "Diamond Book," and another book which covered watches, watch bands, etc. The book of expenditures covered both overhead and purchases. The records of purchases were given up to August 19, 1946, and the records of sales were kept until November 7, 1945. It was admitted that these books showed gross profits on each transaction except in occasional cases where no profit was made. Sher stated to the investigator that there was an oral agreement that the profits should be divided equally. He kept the books and both he and an expert accountant witness for defense testified to the effect that the books were accurate.

The unreported income of the three partners was estimated from the books as follows:

| Partner | 1944 | 1945 |
|---|---|---|
| Jacob Strauch | $19,859.80 | $14,008.93 |
| Alex Strauch | 19,859.80 | 14,008.92 |
| Harry Sher | 17,033.10 | 11,390.30 |

The government arrived at its estimate of income from the partnership by totalling the entries for gross profits and subtracting all the allowable business expenses, for 1944 and 1945, the profit for these years being found to be $59,579.39 and $42,026.77, respectively. The estimate of the government was relatively close to the statement signed by the partners, which figured income for 1944 at $63,958.97, and for 1945 at $26,398.22. Jacob Strauch and Alex Strauch admitted that they had reported none of this partnership income and Sher reported only $2,326.69 in 1944 and $2,115.62 in 1945. That the partners actually received substantial amounts from the partnership was shown by three checks drawn January 9, 1945, to "cash" cashed by the three partners individually, and totalling $30,000.

The contention that the evidence of unreported partnership income was not admissible because the government used defendants' accounting system instead of making inventories has no merit. Section 22(c) of the Internal Revenue Code of 1939, 26 U.S.C. § 22(c), provides that, whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. Regulation 111, Section 29.-22(c)–1 of the applicable regulations issued by the Commissioner states that, in order to reflect the net income correctly, inventories at the beginning and end

of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor.

Under this statute and regulation the Commissioner had a discretionary authority to require the taxpayer to take inventories. We are cited to no section of the statute nor to any regulation requiring the Commissioner to take an inventory and, as a practical matter, only the taxpayer can take an inventory. Here the taxpayers took no inventories. Defendants in effect contend that, because defendants failed in their duty to keep proper records, merely recording gross sales and expenses, the government cannot prove fraudulent evasion of income tax from defendants' own books and accounts. The purpose of inventories, as stated in Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 268, 50 S.Ct. 263, 265, 74 L.Ed. 848, "is to assign to each period its profits and losses." In this case Justice Brandeis observed that whether in a particular business inventories are necessary for the determination of income is a question left by the statute to the judgment of the Commissioner. The Lucas case held that the taxpayer should have taken inventories. But here the books disclosed the gross profits on each sale which had a profit and disclosed instances where there was no profit. They also disclosed the complete expense of operation and thus assigned to each year its profits and losses. Under 26 U.S.C. § 41, the method of accounting regularly employed in keeping the books of the taxpayer is to be the basis of the computation of the net income. This section was complied with in the computations herein.

We are cited to no decision in which a judgment for evasion of income tax was reversed because the taxpayer failed to file inventories, and the government in establishing income which was shown to have been received in substantial amounts employed taxpayers' own books, which correctly showed gross profits, made proper deductions for all expenses and revealed substantial unreported income.

We deem it unnecessary to discuss other questions previously raised before this court, given extensive consideration on application for rehearing, and not covered by the doctrine of the Holland, Friedberg, Smith, and Calderon cases.

The trial judge charged the jury at considerable length upon issues presented. Defendants' two special requests were allowed and, on being given the opportunity to make further requests at the conclusion of the charge, able counsel failed to take advantage of the opportunity. In view of the uncontradicted evidence of the books and other direct evidence supporting the verdict, we conclude that no prejudice resulted from the charge and that no reversible error is shown. We adhere to our conclusion originally announced that the verdicts of the jury are sustained by overwhelming evidence. The government proved by testimony independent of the statements used in evidence a consistent pattern of underreporting large amounts of income and of defendants' failure to include all of their income in their books and records. Holland v. United States, supra, 348 U.S. 139, 75 S.Ct. 127. Independent evidence was shown of the likely source of unreported taxable income. Holland v. United States, supra, 348 U.S. 138, 75 S.Ct. 127. The independent evidence fortified the truth of the admissions made. The tax returns and the failure to make returns corroborated the admissions. Smith v. United States, supra. The general history of defendants during the taxable years provided sufficient independent evidence of the crime of tax evasion to corroborate their written statements. United States v. Calderon, supra.

The judgments of the District Court are affirmed.