**UNITED STATES of America,**
**Plaintiff,**

v.

**Louis C. MIRIANI, Defendant.**

**Crim. No. 42093.**

United States District Court,
E. D. Michigan, S. D.

Sept. 19, 1967.

On Motion for Adjournment
April 29, 1968.

On Motion to Suppress Evidence
May 1, 1968.

Lawrence Gubow, U. S. Atty., Anthony F. Cafferky, Stanley P. Gimbel, Dept. of Justice, Detroit, Mich., for plaintiff.

J. Bruce Donaldson, Fletcher, Donaldson & Ruwart, George E. Woods, Detroit, Mich., for defendant.

## MEMORANDUM

NEESE, District Judge.

This is in clarification of the Court's *nunc pro tunc* order of September 14, 1967.

Although the prosecution is relying on the net worth method [1] of undertaking to substantiate the charges in the indictment herein, it also insists on its right to introduce evidence which it contends will demonstrate that the defendant Mr. Miriani's visible assets greatly increased at times when he was receiving unrecorded amounts of taxable income. Such evidence is admissible as in corroboration of the net worth method as tending to show that the defendant was understating his income during the prosecution years. Smith v. United States (1954), 348 U.S. 147, 74 S.Ct. 194, 99 L.Ed. 192, 201 (headnote 21), cited in United States v. Calderon (1954), 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202, 208 (headnote 9); Holland v. United States (1954), 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, 165; see also Anno: Tax Evasion, Net Worth, 99 L.Ed. 167–188, esp.

---

1. As opposed to the method of direct unreported income.

167, § 5(a) at 182; United States v. Chapman, C.A.7th (1948), 168 F.2d 997, 1001 [5], certiorari denied (1948), 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401; Miller v. United States, C.A.8th (1966), 354 F.2d 801, 810 [8].

This line of proof being available to the prosecution, the defendant is entitled to advance notice of the particulars thereof in order to prepare any defense he may have to the particular items to be offered in evidence against him. Thus, the Court, being of the opinion that justice so required, Rule 7(f), Federal Rules of Criminal Procedure, directed a supplementation of the bill of particulars herein.

## MEMORANDUM OPINION AND ORDER

### On Motion for Adjournment

■ The defendant moved the Court for another adjournment of the trial herein, claiming that being forced to trial may result in the loss of his life or a real and appreciable loss of health. A full evidentiary hearing on this issue was conducted by the Court on April 29, 1968, during which the defendant's personal physician and three heart specialists testified.

Mr. Miriani was indicted on April 12, 1966, slightly more than two years ago. This particular judge was designated a judge of this District on July 27, 1967 and assigned to preside at the trial of this action. Six days afterward the Court assigned September 8, 1967 for hearings on the multiple motions then outstanding and September 18, 1967 as the date for the commencement of trial, if same continued to be indicated after dispositions thereof.

The defendant was hospitalized on the very eve of the first of those two dates, and he interposed a motion on September 8, 1967 for a continuance for health reasons. The Court considered that motion and the testimony of Dr. Ernest L. Stefani on that date, and an accurate prognosis of Mr. Miriani's physical condition being then impracticable, a further hearing was held on September 18, during which a cardiologist Dr. Henry L. Smith also testified. From the cumulative medical evidence presented in those hearings, the Court was of the opinion that Mr. Miriani should not be compelled at that time to leave his hospital bed to come into court and defend himself while his true condition could not be ascertained. This action was postponed indefinitely until the condition of Mr. Miriani could be determined.

It appeared from representations of counsel subsequent to that date that the prognosis of Mr. Miriani's health was such that he would be able physically to stand trial after March 1, 1968. The Court thereupon advised counsel on March 4, 1968 to be prepared for the reassignment of trial dates herein immediately the designated judge could become available and any time after Easter, 1968.

When the Court assigned April 29, 1968 as such commencement date, it was soon confronted with a motion for a continuance of the trial until May 6, 1968 by the prosecution, on the claim of a conflict in the schedule of one of its counsel. Before the Court acted formally on that motion, it was withdrawn. Thereafter, on April 17, 1968, the defendant interposed his instant motion; and, it was assigned for hearing on April 29, 1968, with any commencement date of the trial being tentatively reassigned for May 1, 1968.

Mr. Miriani is a member by popular election of the governing body of the City of Detroit, Michigan. He served heretofore as that large metropolis' mayor. Involving as this case does a well-known person, unusual public interest has been attracted. This Court, however, cannot be, and is not being, guided in accordance with whatever public opinion there may be in connection with the long delay in bringing Mr. Miriani to answer the felonious charges lodged against him.

Mr. Miriani has exceeded the Biblical life expectancy of three-score-and-ten years. He is overweight. He suffers

from an elevated blood pressure. His physical condition generally is such, as all the physicians heard agree, that his health will not be enhanced by the rigors of the trial now confronting him. This Court cannot be, and is not being, guided by the obvious sympathetic feeling one man has for another.

Mr. Miriani faces charges of having violated the criminal law of the United States. In the absence of compelling reasons to the contrary, he must stand trial on those accusations. But, income tax evasion is not a capital offense. The government of the United States does not demand of Mr. Miriani his life, if he should be found guilty of the charges in the indictment returned against him. Neither should Mr. Miriani be required to surrender whatever good health he still possesses and pass the remainder of his golden days as a pitiable invalid, merely to answer the charges. However, no person may be excused of crime only because of physical illness.

This defendant must be treated equally with all other citizens under the law. Too much must not be demanded of him because he occupies a place in the public eye. Too little must not be required of him because he is aged and ill.

The Court has been provided with no easy answer in this dilemma. Medical science enables its experts to advise the Court of the possibilities of death or great harm to Mr. Miriani if he goes to trial, but no one has been able to apprise the Court of the probabilities that such will happen. Mr. Miriani's personal physician, a general surgeon, expressed his opinion that a trial will seriously endanger the health of his patient. One specialist in such matters, Dr. Smith, advised that the Court would be taking a calculated risk to force Mr. Miriani to trial. Two other such specialists stated their respective expert opinions that the chances involved in the admittedly calculated risk involved are but moderate. All are agreed that Mr. Miriani has attained the maximum recovery of his health which can be anticipated within the realm of reasonable medical certainty.

Thus, the Court itself must decide from all the evidence presented whether calculations are such as to the patent risks involved that Mr. Miriani must be compelled to proceed. As is true of so many judicial determinations, this is an uneasy task. Should the Court err in its judgment, a deprivation will surely result—either to the people of the United States whose right it is that Mr. Miriani be tried, or to Mr. Miriani whose right to life and reasonable health may hang in the balance. Yet, decision must be made; nothing can be gained by further delay.

■ Long delays in the prosecution of those charged with crime are inimical to our system of justice and should not be countenanced, save for compelling reasons. United States v. Alker, C.A.3rd (1960), 260 F.2d 135, 159 [39]. The burden of having proved that such compelling reasons are extant here devolved upon Mr. Miriani. He has not carried this burden of proof, and his motion of April 17, 1968, hereby is

Denied.

Unless, after the Court rules on the defendant's further motion for the suppression of certain evidence, the prosecution concludes that it then has insufficient proof to proceed therewith, trial of Mr. Miriani will commence at 9:00 o'clock, a. m., EDT, Wednesday, May 1, 1968, until and during which the defendant will remain at liberty on his present bond.

The Court will accommodate the trial herein in any reasonable manner to serve the best interests of the defendant's health. Court sessions will begin at 9:00 o'clock, a. m., conclude at 1:00 o'clock, p. m., and a recess will be taken near the half-way point in time. Mr. Miriani may have any physician present at any proceedings he may wish. All counsel are admonished to apprise the Court promptly of any appreciable change in Mr. Miriani's condition.

Once the trial is begun in the presence of Mr. Miriani, any voluntary absence on his part will not prevent the trial's continuing. Evans v. United States, C. A.6th (1960), 284 F.2d 393, 394 [1]. The Court will consider if and when any occasion arises whether any such absence is voluntary or involuntary.

## MEMORANDUM OPINION AND ORDER

### On Motion to Suppress Evidence

■ The Court conducted a full evidentiary hearing on April 30, 1968, on the defendant's motion to suppress for use as evidence herein documents and other information obtained by agents of the Internal Revenue Service, federal Treasury Department, on the ground that such evidence was obtained by the officers illegally without a search warrant, Rule 41(b) (3) (1), Federal Rules of Criminal Procedure. Mr. Miriani claims violations thus of rights guaranteed to him by the Fourth, Fifth and Sixth Amendments to the Constitution of the United States.

The defendant Mr. Miriani, in addition to having served as the mayor, and as such, the chief law enforcement official of one of the major cities in the United States, is an attorney who has been a member of the Bar for 45 years, 30 years of which included the handling of civil matters in the legal-aid field. He testified, nonetheless, that he was not aware of his constitutional rights under the above amendments as they relate to investigations by the Internal Revenue Service (I. R. S.).

In earlier years not related to the times pertinent to the instant consideration, Mr. Miriani had consulted with Mr. Louis Dingell, a revenue agent affiliated with the audit division of I. R. S., concerning matters involving his federal tax situation. In August of 1963, Mr. Dingell began an investigation of the defendant Mr. Miriani's records and tax returns which led ultimately to this prosecution. In November of that year Mr. Miriani met with Mr. Dingell and Messrs. Richardson and Ricard for audit purposes.

The audit investigation of Mr. Miriani's tax liabilities proceeded until Mr. Dingell referred the matter in August, 1964, to the intelligence division of I. R. S. In that division, the further investigation was assigned to Mr. Robert K. Schick, a special intelligence agent. Messrs. Dingell and Schick were unacquainted at that time and had engaged in no conversation regarding the Miriani case.

At the request of Mr. Schick, Mr. Miriani reported to the I. R. S. offices in the federal building, Detroit, Michigan, on September 28, 1964. He went there alone and entered a conference room in which there were several employees of the Treasury Department. Mr. Dingell introduced Mr. Shick and Mr. Miriani, and these three gentlemen then retired to a private office within the conference room. Unknown to Mr. Miriani, Mr. Schick had concealed electronic equipment in that office to record the conference. From that point forward, there is diametrical conflict in the testimony of those participants as to what was said and done.

Messrs. Schick and Dingell say that the former showed Mr. Miriani his identification credentials, including a badge. Mr. Miriani says he did not.

Mr. Schick claims that he advised Mr. Miriani that he (Mr. Miriani) was not required to answer any questions asked him by the investigators nor to incriminate himself in any manner; that he (Mr. Schick) was in the state of mind to fully advise Mr. Miriani of all his rights; but that Mr. Miriani interrupted him, saying: "Yes, yes, I understand. Look I want to cooperate."

Mr. Dingell, in his testimony, quotes that conversation as follows:

That Mr. Schick told Mr. Miriani that he (Mr. Miriani) had been called in to discuss his income tax returns; that Mr. Schick stated to Mr. Miriani, "You know your constitutional rights and that you don't have to answer any question or give

us any information"; and that Mr. Miriani then respondened, "I'm not afraid to answer any questions; I am willing to cooperate with you completely."

The version of the defendant Mr. Miriani as to that incident is that Mr. Dingell said to him, "This is Mr. Schick who is working with (or, helping) me in this audit"; that, without more, Mr. Schick inquired, "Will you cooperate with us?"; to which Mr. Miriani says he responded, "Yes, I will"; to which in turn Mr. Schick then said, "If you'll cooperate with us, we'll cooperate with you." Mr. Miriani stated that Mr. Schick inquired if he (Mr. Miriani) had a lawyer, and that Mr. Miriani responded in the negative.

All are agreed that the conference continued for about one hour. Mr. Miriani claims that Mr. Schick left him and Mr. Dingell for about 20 minutes within that period, during which time Mr. Dingell requested Mr. Miriani to furnish him with copies of his (Mr. Miriani's) federal income tax returns for the years 1927 through 1956, inclusive. Mr. Dingell testified that Mr. Schick was present in the conference with him and Mr. Miriani for its entirety.

There was a further conference, unrecorded, on October 6, 1964, attended by Messrs. Miriani, Schick, Dingell and a Mr. Getto. Mr. Schick and another I. R. S. official, Mr. William Rowles, conferred again on October 8, 1964, the proceedings of which were recorded. As a result of the latter conference, Mr. Miriani provided I. R. S. with certain documents which are to be offered in evidence in this prosecution. (Mr. Miriani declined the receipt profered him for these documents.) Another taped interview occurred on October 15, 1964, between

Messrs. Miriani and Schick and a Mr. Richardson, which Mr. Schick recorded. This last-mentioned conference also resulted in Mr. Miriani's subsequently furnishing I. R. S. officials, through his attorney, with cancelled checks and other records and documents the prosecution now proposes to offer into evidence.

Reprehensible though this particular judge finds the practice of revenue agents' recording electronically without his knowledge * the statements of a taxpayer under investigation, the matters here involved appear to have been foreclosed by a recent ruling of the United States Court of Appeals for this Circuit, wherein it is stated that "* * * no court has held that a man who is not advised of his right to have his attorney present when questioned by an Internal Revenue agent, is thereby deprived of his constitutional rights. A citizen summoned before such federal agents has the option to refuse to answer their questions * * *." United States v. Maius, C.A.6th (1967), 378 F.2d 716, 719 [3], cert. den., 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219. If that expression leaves any doubt as to whether other of Mr. Miriani's rights were violated, an earlier opinion of another Circuit Court, which the supreme Court declined to review, is clarifying, *viz.*"

There, it was argued "* * * that under the 'philosophy' of Escobedo, government agents must be 'held to the duty, dating from the time they suspect the taxpayer of fraud, of informing him of the criminal nature of the investigation and his absolute constitutional right to remain silent under the Fifth Amendment'.

"We find nothing in the Escobedo opinion or its 'philosophy' which would

---

* No eavesdropping was involved in this, in the proper sense of that term. "* * * The Government did not use an electronic device and listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent[s] [were] participant[s] and which [those agents were] fully entitled to dis-

close. And the device was not planted by means of an unlawful physical intrusion of [Mr. Miriani's] premises under circumstances which would violate the Fourth Amendment. * * *" The recorder heard no more from Mr. Miriani than did the agents. Lopez v. United States (1963), 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462.

**222**

impose this duty upon revenue agents during their investigation of a taxpayer's returns and records. It is clear that all statements made and all documents delivered were voluntary acts of the appellant and were not induced by stealth, trickery or misrepresentation. As the court well said in United States v. Sclafani, 2 Cir., 1959, 265 F.2d 408, 414–415, cert. den. 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534:

'A "routine" tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission.

\* \* \* \* \* \*

'Moreover it is unrealistic to suggest that the government could or should keep a taxpayer advised as to the direction in which its necessarily fluctuating investigations lead. The burden on the government would be impossible to discharge in fact, and would serve no useful purpose.' \* \* \*

" \* \* \* All of the agents properly identified themselves to appellant and disclosed their purpose to audit his returns. Appellant was fully apprised of the Government's concern with the accuracy of his returns. We find no violation of any of his constitutional rights. \* \* \* " Kohatsu v. United States, C.A.9th (1965), 351 F.2d 898, 902 [inc. 2], certiorari denied (1966), 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017.

These foregoing judicial pronouncements render it unnecessary for the Court to find whether Mr. Miriani was advised of any, or a part of, his constitutional rights before he turned over voluntarily to the investigation agents the evidence which he now asks to be squelched. His motion for a suppression of that evidence hereby is

Denied.

The clerk will serve a copy of this memorandum on the United States attorney for this District, to the end that a grand jury or other investigation may ensue of any perjury committed herein in the proceedings of April 30, 1968.

There hereby is reserved to the defendant an objection to each question and answer concerning the documents sought by the defendant's motion to be suppressed. No further objection or exception is necessary.