UNITED STATES, Appellee,

v.

**Private (E–1) Marlin J. LOEWEN, II, SSN 461–98–6918, United States Army, Appellant.**

**CM 441239.**

U. S. Army Court of Military Review.

30 Sept. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel R. Rex Brookshire, II, JAGC, Major Raymond C. Ruppert, JAGC, Captain Mary R. Brady, JAGC, Captain John Lukjanowicz, JAGC, and Major Robert C. Rhodes, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, Major Joseph A. Rehyansky, JAGC, and Captain Daniel N. Velling, JAGC, were on the pleadings for appellee.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

The appellant was convicted of twenty-six specifications of larceny of drugs and twenty-six specifications of forgery of prescriptions for the same drugs, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 923 (1976). His approved sentence provides for a dishonorable discharge, confinement at hard labor for eighteen months and total forfeitures.

The appellant challenges the admissibility of his oral inculpatory statement on the ground that it was uncorroborated. Mil.R. Evid. 304(g). We agree that it was not corroborated and we reverse.

During the period from 6 October 1980 until 23 January 1981, twenty-six prescription forms, on which the doctors' signatures were forged, were presented and filled at the Fort Gordon pharmacy. Seventeen of the prescription forms listed the appellant as the patient; nine listed his wife. Thirteen bore the forged signatures of a Dr. Weldon; thirteen bore the forged signatures of a Dr. Schleyer-Foley. Eleven of the prescriptions were for Tylenol No. 3, fourteen were for Tylox, and one was for Vibramycin, all of which are controlled drugs. The last two prescription forms, one for Tylox and one for Vibramycin, were used by the appellant's wife on 23 January 1981. The forms used on that day listed her name in the patient identification block and purported to be signed by Doctor Weldon. The pharmacy officer determined that the doctor's signature on the two forms was forged and he alerted the military police. After Mrs. Loewen received the drugs and began walking toward the exit, she was joined by the appellant, who had been waiting outside in their automobile for about thirty minutes. The appellant and his wife were apprehended as they were leaving the pharmacy. Both were transported to the CID office where the appellant was interviewed by a Special Agent Rogers. He initially denied any wrongdoing. However, after being informed that his wife also was

a suspect, the appellant told the CID agent that he had forged the prescriptions and that his wife was not involved in the forgery. The appellant told Rogers that he had found one of the prescription forms in a trash can in Dr. Weldon's office on 12 December 1980, and that the medication had already been entered on that form. The appellant told Rogers that he either completed or made part of Dr. Weldon's signature and then entered his wife's name in the patient identification block.

The appellant explained the second forged prescription by telling Rogers that he stole a prescription form from Dr. Weldon's desk after seeing Dr. Weldon on 15 December 1980. The appellant said that the medication had already been entered on this form but that the remainder was blank. The appellant said that he wrote Dr. Weldon's name, the date, and his wife's name on the form. Lastly, the appellant told Rogers that he had forged eight or nine other prescriptions prior to 23 January 1981, but that he could not remember the dates.

The government introduced the laboratory report of a handwriting expert who examined thirty-three prescriptions, including the twenty-six before us, and compared them to the exemplars taken from the appellant, Dr. Weldon and Dr. Schleyer-Foley. No exemplars were obtained from the appellant's wife. The handwriting expert concluded that:

(1) Dr. Schleyer-Foley did not sign her name or write the medications on the sixteen prescriptions bearing the Schleyer-Foley signature; however, all sixteen were executed by a common author;

(2) it could not be determined whether Dr. Schleyer-Foley wrote the patients' names on the sixteen forms purporting to bear her signature;

(3) Dr. Weldon did not sign his name or write the medications on the seventeen exhibits bearing the Weldon signature;

(4) it could not be determined whether Dr. Weldon wrote the patients' names on the seventeen forms purporting to bear his signature;

(5) the appellant "did not make" the purported signatures of Dr. Schleyer-Foley and "probably did not make" the purported signatures of Dr. Weldon;

(6) the medications on all thirty-three forms probably were written by the same person; and

(7) the patients' names on four of the "Schleyer-Foley" forms and four of the "Weldon" forms were made by a common author and the rest by a second author.

In military practice an admission or confession is considered corroborated "only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth." Mil.R.Evid. 304(g). Regarding the quantum of evidence required for corroboration, it "need raise only an inference of the truth of the essential facts admitted." Mil.R.Evid. 304(g)(1).

The corroboration rule in Mil.R.Evid. 304(g) is substantially the same as paragraph 140a(5) of the Manual for Courts-Martial, United States, 1969 (Revised edition), which it superseded. Paragraph 140a(5) of the Manual was intended to incorporate the corroboration rule adopted by the Supreme Court in *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed.2d 192 (1954), in place of the previous Manual provision requiring proof of the corpus delicti. *See* Department of the Army Pamphlet 27–2, Analysis of Contents: Manual for Courts-Martial, United States, 1969 (Revised edition), at 27–9, 27–10 (1970). The current corroboration rule generally is considered to be less stringent than its predecessor, the corpus delicti rule. *See generally United States v. Seigle,* 22 U.S.C.M.A. 403, 404, 47 C.M.R. 340, 341 (1973); *United States v. Anderson,* 9 M.J. 530 (ACMR), *aff'd,* 9 M.J. 280 (C.M.A.1980); *United States v. Bailey,* 3 M.J. 799, 803 n.6 (A.C.M.R.), *pet. denied,* 4 M.J. 149 (C.M.A.1977). However, the current rule can impose a greater burden on the prosecution in a particular case, because

it extends the corroboration requirement to include the identity of the accused as the perpetrator, an element not required to be corroborated under the old corpus delicti rule. *See Smith v. United States,* 348 U.S. at 154, 75 S.Ct. at 198. *Compare* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 140a(5), *and* Mil.R. Evid. 304(g) *with* Manual for Courts-Martial, United States, 1951, paragraph 140a.

The Supreme Court did not discard the corpus delicti rule in *Smith* and *Opper,* but instead provided an alternate method of corroboration which could be used in cases where there is no tangible corpus delicti. The Supreme Court's intention to preserve rather than discard the corpus delicti rule was demonstrated in *United States v. Calderon,* 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), decided the same day as *Smith* and *Opper.* In *Calderon* all elements of an admission could not be corroborated by independent evidence. However, the Court found the admission sufficiently corroborated because the independent evidence established that the offense had been committed. 348 U.S. at 168–69, 75 S.Ct. at 190–91. In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court confirmed that proof of the corpus delicti remains an acceptable method of corroborating a confession. 371 U.S. at 489–90 n. 15, 83 S.Ct. at 418–19 n. 15. The federal courts have continued to permit corroboration by proof of the corpus delicti. *See United States v. Johnson,* 589 F.2d 716, 718–19 (D.C.Cir.1978); *United States v. Fearn,* 589 F.2d 1316, 1321–22 (7th Cir. 1978); *United States v. Stabler,* 490 F.2d 345, 349–50 (8th Cir.1974); *United States v. Bukowski,* 435 F.2d 1094, 1106–07 (7th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *Rodriquez v. United States,* 407 F.2d 832, 833–34 (9th Cir.1969). However, since corroboration is specifically covered by the Military Rules of Evidence, we may not apply the more flexible standard adopted by the federal courts. Mil.R.Evid. 101; *United States v. Smith,* 13

U.S.C.M.A. 105, 120, 32 C.M.R. 105, 120 (1962) (the corpus delicti corroboration rule in the Manual for Courts-Martial, 1951, paragraph 140, must be followed in trials by courts-martial instead of the presumably more lenient *Opper* rule).*

■ Applying Mil.R.Evid. 304(g) to the appellant's confession in this case, we find it uncorroborated, even though a tangible corpus delicti, i.e., a forgery by someone, was established by independent evidence. The essential facts admitted by the appellant in this case were that:

(1) the appellant found a prescription form in a trash can in Dr. Weldon's office on 12 December 1980;

(2) the appellant stole a prescription form from Dr. Weldon's desk on 15 December 1980;

(3) the medication was already entered on both forms;

(4) the appellant wrote all or part of Dr. Weldon's signature on the two forms used by his wife on 23 January 1981;

(5) the appellant entered his wife's name in the patient identification block of both forms used on 23 January 1981;

(6) the appellant forged eight or nine other prescriptions on unspecified dates prior to 23 January 1981; and

(7) the appellant was addicted to Tylox.

The appellant's admission that he was addicted to Tylox was corroborated by independent evidence that the appellant had received, by lawful means, sufficient quantities of the drug to cause physical dependence. However, none of the other essential facts are independently corroborated and some are contradicted by the government's evidence.

The appellant's statement that he found a prescription form in a trash can in Dr. Weldon's office on 12 December 1980 is uncorroborated, as is his statement that he stole a prescription form from Dr. Weldon's

---

* The federal courts are not restricted by a counterpart to Mil.R.Evid. 304(g). *See* Manual for Courts-Martial, United States, 1969 (Revised edition) (amended by Change 5, 1 April 1982), Appendix A, Analysis of the Military Rules of Evidence, at A18-7.

desk on 15 December 1980. The mere fact that the appellant visited Dr. Weldon on 15 December 1980 does not corroborate a theft from Dr. Weldon's office on that date. *Cf., United States v. Lowery,* 13 M.J. 961 (A.F. C.M.R.1982) (presence at apartment where larceny occurred insufficient to corroborate confession of being accessory to larceny).

There is no independent evidence that the appellant entered his wife's name on any of the forms. The government's handwriting expert concluded that two separate authors wrote the patient identification entries on the thirty-three forged prescriptions which he examined. However, since the government separated the prescriptions and handwriting exemplars from the laboratory report and did not introduce them, we cannot ascertain which of the prescriptions contained a patient's identification entry written by common authors. The expert could not determine whether the appellant had made any of the patient identification entries, but it is clear that the appellant did not make the entries on all of the thirty-three forms examined by the handwriting expert.

The appellant's statement that the medication was already written on the two forms stolen from Dr. Weldon's office is contradicted by the handwriting expert's conclusion that Dr. Weldon did not make the entries and Dr. Weldon's testimony that he did not write any part of them. The appellant's admission that he signed Dr. Weldon's name to the two forms used on 23 January 1981 is contradicted by the handwriting expert's conclusion that the appellant did not make the doctor's signature.

Lastly, the appellant's admission that he forged eight or nine other prescriptions is contradicted by the handwriting expert's conclusions that appellant probably did not make the sixteen signatures of Dr. Schleyer-Foley, and that two separate authors made the patient identification entries.

■ There is no independent evidence of a joint venture by appellant and his wife. Likewise, there is no independent evidence that the appellant ever presented any of the forged prescriptions to the pharmacy, received any drugs, or knew his wife was using forged prescriptions for any purpose. There is no evidence that the appellant knew the prescriptions were forged until after the CID agent told him they were forged. The pharmacy officer testified that the appellant's wife would be allowed to obtain drugs by using prescriptions listing her husband as the patient. The mere fact that the appellant was in the company of his wife after she had obtained drugs with forged prescriptions made out to her is insufficient to support an inference that the appellant was criminally involved as a principal in the forgeries on 23 January 1981 and lends no credence to the appellant's purported confession to "eight or nine" other forgeries. The independent evidence in this case not only fails to support an inference that the confession was reliable, it strongly indicates that it was false.

Without the appellant's admission that he stole the forms and executed them, there is insufficient evidence to establish his guilt beyond a reasonable doubt. The remaining evidence establishes only that appellant may have developed a physical dependence on Tylox as a result of legitimate medical treatment, that someone entered his name as the patient on some of the forged prescriptions, and that he joined his wife on 23 January 1981 after she had obtained drugs with forged prescriptions made out to her. The mere fact of their marriage does not establish that they acted in concert. The evidence is insufficient to establish the appellant's guilt either as a sole perpetrator or as a principal.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge O'DONNELL and Judge WERNER concur.