**F I L E D**

**UNITED STATES COURT OF APPEALS**

**November 29, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NOE ESPINO, JR., also known as
Junior,

Defendant-Appellant.

No. 05-3103

(D. of Kan.)

(D.C. No. 03-CR-20051-08-JWL)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Noe Espino appeals his jury conviction for drug conspiracy charges arising

from a methamphetamine distribution ring in Kansas City, Kansas. He argues

three issues on appeal: (1) the evidence presented at trial was insufficient to

support his conviction; (2) the district court improperly admitted evidence of a

---

[*] Appellant's motion to submit on briefs was granted after the panel
examined the briefs and the appellate record to determine unanimously that oral
argument would not be of material assistance in the determination of this appeal.
*See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

murder on the basis it was connected to the drug conspiracy; and (3) the sentence imposed by the district court violated his Sixth Amendment rights.[1]

We AFFIRM the jury's verdict on sufficiency grounds, and the district court's decision to admit the murder evidence. We also AFFIRM the Espino's sentence as constitutional.

## I. Background

Espino was indicted on drug conspiracy charges in 2003, and tried along with two co-defendants, Carlos Portillo-Quezada and Kenneth Waterbury. The government contended the three men were part of a large-scale methamphetamine distribution ring in Kansas City, Kansas. After a jury trial, Espino was convicted of conspiracy to distribute in excess of 500 grams of methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846. Portillo-Quezada and Waterbury were also convicted on drug distribution charges.

---

[1] Espino's notice of appeal referred to "all motions and objections" presented at trial. Two of the post-trial motions—for acquittal under Rule 29, and for a new trial under Rule 33—were untimely filed. While the district court considered them on the merits, it should not have. The government objected to the motions as untimely, and under the United States Supreme Court's decision in *Eberhart v. United States*, 546 U.S. 12 (2005), the motions should have been dismissed. In this appeal, however, Espino elsewhere preserved his sufficiency of evidence objection and evidentiary objection. Espino made a proper Rule 29 motion for acquittal at the close of the prosecution's case, and elected not to present evidence in his defense. That objection adequately preserved his right to appeal the sufficiency of the government's case against him. *United States v. Calderon*, 348 U.S. 160 (1954); *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081–83 (10th Cir. 2004). He objected to the murder evidence in a motion prior to trial and at the time the evidence was received by the trial court.

We have upheld both of those convictions, *see United States v. Portillo-Quezada*, ___ F.3d ___ (10th Cir. 2006); *United States v. Waterbury*, ___ F'Appx. ____. Many of the background facts outlined in those cases are pertinent to Espino's claims on appeal, and will be repeated only as necessary.

To summarize, at trial the prosecution contended that Portillo-Quezada managed a large scale drug distribution operation along with his two brothers, Eloy and Raul Portillo. Waterbury was a buyer and seller of drugs, who also assisted the conspiracy by helping customers locate and visit "storefront" properties where drugs were distributed. Numerous other individuals were involved in the production, distribution, and delivery of the drugs. Espino performed at least two functions for the conspiracy: (1) he assisted in buying and selling drugs; and (2) he played an enforcement role in the conspiracy, including participation in a murder against a person who had stolen drugs from the conspiracy and had disclosed the identity of a co-conspirator to police investigators. The case against Espino consisted of the testimony co-conspirators, as well as his confession to taking part in the murder.

## II. Discussion

### A. Sufficiency of the Evidence

Espino first argues that the evidence presented at trial was insufficient for a reasonable jury to find him guilty of conspiracy to possess and distribute drugs. We review sufficiency of the evidence de novo, *United States v. Wiseman*, 172

F.3d 1196 (10th Cir. 1999), and weigh the evidence presented in the light most favorable to the verdict. The test is whether a reasonable jury could conclude the defendant was guilty beyond a reasonable doubt. *United States v. McIntosh*, 124 F.3d 1330, 1334 (10th Cir. 1997). We defer to the jury's credibility determinations and "its conclusions about the weight of the evidence." *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000). A reasonable jury can find a defendant guilty beyond a reasonable doubt in light of both "'the direct and circumstantial evidence, along with reasonable inferences therefrom.'" *United States v. Nguyen*, 413 F.3d 1170, 1175 (10th Cir. 2005) (quoting *United States v. Nelson*, 383 F.3d 1227, 1229 (10th Cir. 2004)). Because Espino did not present a defense, we review the record as it existed at the close of the government's case. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

To prove conspiracy, the government must show Espino: (1) agreed with others to engage in drug distribution; (2) knew about the existence of the conspiracy; (3) participated voluntarily; and (4) was interdependent with other co-conspirators. *Delgado-Uribe*, 363 F.3d at 1083. Espino argues that the government's evidence was insufficient to prove the second and third elements of conspiracy—that he knowingly and voluntarily participated in the methamphetamine distribution ring. Viewing the evidence in the light most favorable to the jury's verdict, we disagree.

Espino argues that the prosecution presented no direct evidence of his participation in the conspiracy, and that the circumstantial evidence presented was not substantial. The prosecution's theory, in contrast, was that Espino served the conspiracy by buying and selling drugs, and enforcing discipline on its behalf.

At trial, the prosecution presented the testimony of Carl Rieger, a principal deputy of Portillo-Quezada's who assisted the conspiracy by renting properties for drug distribution, handling money generated by sales, and buying and selling drugs. Rieger was, in short, intimately involved in the conspiracy. He testified that Espino was both known to purchase large quantities of drugs on a repeated basis and known as a "regular distributor" for the Portillo-Quezada methamphetamine ring. Supp. Vol. IV at 72–73, 197. He participated, along with Portillo-Quezada, in drug transactions where Espino was present. Espino was a frequent visitor to the rental house where the conspiracy distributed drugs. He observed Espino brandishing weapons during drug transactions.

Another co-conspirator, Patrick Loffredo, testified that he first met Espino when he and another co-conspirator picked up methamphetamine from Espino. Tommy Davidson, another co-conspirator, testified at trial that Espino was sometimes present in a Portillo-Quezada property during drug transactions. Davidson told the jury that Espino would watch the transactions while holding weapons, and that he interpreted this behavior as intended to intimidate drug buyers.

More directly, the jury heard evidence that Espino confessed to his participation in the murder of Bruce Andrews. Police suspected Andrews had been killed by the Portillo-Quezada drug ring because he had stolen drugs from the conspiracy and revealed the identity of Portillo-Quezada's brother to police. Espino voluntarily confessed to his role in the crime after surrendering to police several days after the police had raided a drug "storefront" and arrested Portillo-Quezada and Waterbury. In his confession, he told police he helped lure Andrews to the scene of the murder, watched as Portillo-Quezada killed him with an assault weapon, helped clean the car and took it to a different location where it was burned. Andrews's body was left at the scene of the murder to be found. Prosecutors contended at trial that the murder furthered the objectives of the conspiracy and was designed to intimidate others who may have wished to steal drugs or cooperate with police.

Espino's role in the murder was corroborated by other witnesses, including Rieger. He testified Portillo-Quezada told him that Espino was paid in $4000 in cash and stolen car parts for his role in the murder. Portillo-Quezada's role as the triggerman was confirmed by the testimony of other witnesses.

A jury may rationally infer the existence of a conspiracy to distribute drugs on the basis of frequent contacts among co-conspirators and from "their joint appearances at transactions and negotiations." *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992). Moreover, a jury may convict a defendant of

conspiracy on the uncorroborated testimony of a single co-conspirator, so long as the jury is properly instructed. *United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 468 (2005). Once the existence of a conspiracy is shown, an individual conspirator's connection to the enterprise need only be "slight, if there is sufficient evidence to establish a connection beyond a reasonable doubt." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1006 (10th Cir. 1992).

Viewed in the light most favorable to the jury, the connection between Espino and the Portillo-Quezada drug distribution ring is more than slight. Evidence was presented that Espino was known to distribute methamphetamine for Portillo-Quezada, that his role in the conspiracy was understood to be that of an enforcer, and that he pursued this role to the point of furthering the conspiracy's interest through murder. On this record, a rational jury could conclude Espino's participation in the conspiracy was knowing and voluntary.

Accordingly, we affirm the district court's denial of Espino's motion for judgment of acquittal.

**B. Murder Evidence**

Prior to trial, Espino filed a motion in limine to prevent the presentation of testimony and evidence regarding Andrews's murder, arguing that admission of such evidence at trial would violate Federal Rule of Evidence 404(b). The district court denied this motion before trial, holding that the evidence was inherent to the

conspiracy and therefore not subject to Rule 404(b). At trial Espino renewed his objection and sought a mistrial claiming that the graphic nature of some of the evidence was irrelevant and unduly prejudicial, and sought a mistrial.

On appeal, Espino renews these arguments. The government contends that the murder was an integral part of the conspiracy. Portillo-Quezada believed that Andrews had stolen drugs from the conspiracy and had revealed the identity of his brother to police. In their view, the murder evidence showed the extent to which the conspirators would go in collecting debts and punishing those who crossed the organization.

In a companion case, *United States v. Portillo-Quezada*, ___ F.3d ___ (10th Cir 2006), we reviewed the admissibility of the murder evidence. For the same reasons, we conclude the district court did not err in admitting the evidence or declining to declare a mistrial. In sum, (1) the evidence was admissible as uncharged acts committed in furtherance of the conspiracy; (2) the evidence was intrinsic to the drug conspiracy, showing steps the conspirators would take to collect debts and punish cooperation with police; and (3) in context, the testimony was not unduly prejudicial.

Accordingly, the district court did not err in admitting the evidence and refusing to declare a mistrial.

## C. Sentencing Error

Espino also argues that the sentence imposed by the district court violates his Sixth Amendment rights. We review his claim de novo. *United States v. Doe*, 298 F.3d 1254 (10th Cir. 2005).

At sentencing, the district court increased Espino's sentence to life in prison because of his participation in the murder of Bruce Andrews. The court stated that the sentencing factors laid out in 18 U.S.C. § 3553(a), and especially § 3553(a)(2) (concerning the need for the sentence imposed to reflect the seriousness of the offense), made a life sentence reasonable and just in light of the circumstances surrounding the crime. *See* USSG §§ 2D1.1(d)(1) and 2A1.1.

Espino argues his sentence violates the Sixth Amendment because the enhancement was based upon his participation in a murder (1) for which he was never charged, and (2) that was never proven to a jury beyond a reasonable doubt. He argues this conflicts with *United States v. Booker*, 543 U.S. 220 (2005), where the Supreme Court held that the Sentencing Guidelines violate the Sixth Amendment to the extent they compulsorily require courts to enhance sentences on the basis of judicial factfinding. *Id.* at 233–34. We disagree.

"When a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts the judge deems relevant." *Id.* In our cases interpreting *Booker*, we have repeatedly recognized that sentence enhancements do not violate the Sixth Amendment where the sentencing court applies the Guidelines in an advisory

fashion.  *United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006); *United States v. Dalton*, 409 F.3d 1247, 1252 (10th Cir. 2005); *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005); *United States v. Lawrence*, 405 F.3d 888, 890 (10th Cir. 2005).   In addition, after *Booker*, a properly-calculated Guideline sentence is "entitled to a rebuttable presumption of reasonableness." *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam).

In light of these holdings, no constitutional violation exists in this case. Espino has no right to a jury determination of the facts the trial judge deems relevant in arriving at his sentence, so long as that sentence is reasonable. Moreover, it is abundantly clear from the record that Espino participated in Andrews's murder—the district court reviewed at sentencing his taped confession detailing his role in the homicide.  Since Espino's sentence was within the Guidelines range, it is presumptively reasonable under *Kristl*.  Because Espino has made no argument to rebut this presumption, we find his sentence reasonable under 18 U.S.C. § 3553(a).

### III.  Conclusion

For the foregoing reasons, we AFFIRM the rulings of the district court.

ENTERED FOR THE COURT

PER CURIAM