RUSSELL, POLING & COMPANY, Newtown Creek Towing Company and Chester A. Poling, Inc., Libellants-Appellants,

v.

CONNERS STANDARD MARINE CORPORATION and THE Tug CORPORAL, Respondents-Appellee,

and

THE TUG RUSSELL NO. 20 and Russell Bros. Towing Co., Inc., Respondents-Impleaded-Appellee.

RUSSELL, POLING & COMPANY, Newtown Creek Towing Company and Chester A. Poling, Inc., Plaintiff-Appellants,

v.

UNITED STATES of America, Defendant and Third-Fourth-Party Plaintiff-Respondent,

(Conners Standard Marine Corporation, Third-Party Defendant-Respondent, Russell Bros. Towing Company, Inc., Fourth-Party Defendant-Respondent).

Nos. 212, 213, Docket 24727-24728.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1958.

Decided Jan. 31, 1958.

Alexander, Ash & Schwartz, New York City (Edward Ash and Sidney A. Schwartz, New York City, of counsel), for plaintiffs and libellants-appellants.

Purdy, Lamb & Catoggio, New York City (Edmund F. Lamb, New York City, of counsel), for third-party-defendants-respondent-appellee, Connors Standard Marine Corporation and Tug Corporal.

George Cochran Doub, Asst. Atty. Gen., Washington, D. C., Paul W. Williams, U. S. Atty., New York City, Paul A. Sweeney and Alan S. Rosenthal, Washington, D. C., Attys., Dept. of Justice for the United States.

Before MEDINA and MOORE, Circuit Judges, and GALSTON, District Judge.

## GALSTON, District Judge.

This is an appeal from a judgment and final decree of dismissal entered May 29, 1957, in the District Court for the Southern District of New York.

The action was instituted by appellants against the United States under the Federal Tort Claims Act (28 U.S.C. 1346(b)) to recover property damage allegedly sustained by their barge Russell Poling No. 29. The action was consolidated for the purposes of trial with a proceeding in admiralty brought by appellants against the Conners Standard Marine Corporation. The court below determined that appellants had not established liability on the part of either the Government or Conners Standard Marine Corporation.

On the night of December 7, 1954, the tug Corporal, owned and operated by the appellee Conners Standard Marine Cor-poration, had in tow appellant's loaded 175 foot steel barge, drawing from 9½ to 10 feet, and said barge was made fast on the tug's port side. They were proceeding northerly in the Tremley Point Reach between the Staten Island and New Jersey shores. There two channel buoys, Nos. 20 and 22, maintained by the United States as aids to navigation, are shown to be stationed on the easterly channel line. Buoy 20 is an unlighted Nun buoy and buoy 22 upstream therefrom is a lighted flashing red buoy.

Shortly before the grounding of the barge, the tug Russell 20 joined the tow as a helper tug making fast on the port side of the barge. The flotilla was navigated and controlled solely by the pilot in charge of the tug Corporal.

The tow proceeded without incident until approximately midnight, when at a point about 50 to 100 feet west of Nun buoy 20, a jar was felt. Shortly thereafter the barge was observed to be sinking by the bow and was later beached further north on the west bank of the channel. A survey of the barge revealed a puncture in the center of the bow at the foot, where the plates curved under to join the bottom plates of the forward peak tank. The several bottom plates extending about 30 feet aft of the puncture were apparently pressed in.

At the time that the jar was felt, no soundings were taken to determine whether the barge was aground or what her position was. The evidence showed that in the area adjacent to buoys 20 and 22, dredging operations had been carried on by contractors working under the direction of the Army Engineers. Buoy 20 had been removed to facilitate dredging operations early in October 1954, but on November 9, 1954, the buoy had been reset by the United States Coast Guard. On July 13, 1954, buoy 22 had been reset by the Coast Guard and its location properly certified.

On the day after the accident, the Army Engineers surveyed the area and found no sunken obstruction. They did find that buoy 20 was approximately 75 yards slightly to the south of east

of its charted position. On the day after that, December 9th, the Coast Guard found the same buoy to be 350 yards southwest of its charted position, and it was then reset. On that same day the Coast Guard found buoy 22 to be off station about 200 feet to the east.

The owners of the barge make claim against the Government on the ground that buoys 20 and 22 were off their charted position at the time of the accident. These buoys, when properly located, marked the shallow water boundary on the east side, and were an indication to navigators that vessels should keep to the west of the buoys.

The Government acknowledged that the buoys were off their charted position on the day after the accident, but did not concede that the buoys were off position at the time of the accident. When the buoys were found off position, they still were attached to their chains and anchors. No proof was offered as to the actual cause of the moving of these buoys, but there was evidence that buoys are often moved by tugs whose tow lines foul the chain of the buoys and drag the buoys off position.

The liability of the Government is predicated upon the Federal Tort Claims Act requiring the Government to exercise due care. Indian Towing Co. v. U. S., 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

■ The Trial Court properly ruled that in order to sustain a claim of negligence against the Government, it is necessary for appellant to prove that the Government had either actual or constructive notice of the fact that the buoys were away from their charted positions. No proof was offered that the Government had any actual notice. The Court below found further that the appellant had failed to prove that the buoys were out of position sufficiently long prior to the accident that the employees of the United States should have known of their displacement.

There was no evidence showing that buoys have a tendency to drift slightly, nor was it shown that the dredging caused the displacement of the buoys. It was shown that passing tugs were the principal cause of buoy movement resulting from the fouling of buoy chains, but there was no evidence as to whether the displacement in the instant case occurred at any specific number of hours or number of days before the accident.

■ Appellants challenged the ruling of the Trial Court by asserting that a prior condition may be inferred from a state of facts subsequently established. Generally, mere proof of the existence of a state of facts does not raise a presumption that the same condition of facts existed at a prior date, since inferences or presumptions of fact ordinarily do not run backward. W. F. Corbin & Co. v. U. S., 6 Cir., 1910, 181 F. 296, 304; Niehoff-Schultze Grocer Co. v. Gross, 205 App.Div. 67, 199 N.Y.S. 196, affirmed 237 N.Y. 509, 143 N.E. 722. Nevertheless, in some circumstances an inference as to the past existence of a state of facts may be proper, as where the present condition is one that ordinarily would not exist unless it had also existed at the time as to which the presumption is invoked. F. W. Woolworth Co. v. Seckinger, 5 Cir., 1942, 125 F.2d 97; Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 1931, 48 F.2d 105.

■ Whether in a particular case a condition that exists on a certain day may be presumed to have existed prior thereto or subsequent thereto, is a matter that depends upon the circumstances of the case. Conner v. Union Pacific Railroad Co., 9 Cir., 1955, 219 F.2d 799, 802.

■■ In the case at bar, the circumstances do not support any inference that the buoys were out of position for any definite period prior to the accident. The fact that buoy 20 the day after the occurrence was 75 yards out of position and the following day 350 yards out of position indicates quite clearly that any presumption of prior condition or of continuance is inapplicable.

■ Appellants contend that the doctrine of *res ipsa loquitur* is appli-

cable. This doctrine ordinarily applies where the instrumentality which caused the accident was in the exclusive control of respondent and the accident which occurred is one which would not ordinarily happen without negligence. Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36; Irwin v. U. S., 2 Cir., 1956, 236 F.2d 774. Clearly, this principle is not applicable here.

 Appellants also assert that there was a government dredge at the time of the accident in the area to the north of buoy 20, and that the Government Inspector aboard the dredge should have noticed that the buoys were off position. The record does not show the scope of the responsibility of the Government Inspector with relation to the buoys, and furthermore there is no showing as to how long a period of time the buoys were out of position.

Appellants also claim that Conners Standard Marine Corporation, the owner of the tug, was negligent. The District Court found that the pilot of the tug Corporal was lured into shallow water without any fault, since he did not know that buoy 20 was off its charted position. Appellants attack this conclusion by stating that the pilot could not see buoy 20 because it was an unlighted buoy. Appellants' contention is not borne out by the record.

The pilot of the tug testified that as he passed buoy 18–A, he saw buoys 20 and 21. He further testified that at the time that the accident occurred, he saw buoy 20 forty to fifty feet on the starboard beam. His testimony was corroborated by the captain of the tug, who indicated that at the time of the accident, he could see buoy 20 forty to fifty feet away.

Appellants also contend that the tug was negligent in failing to have a lookout. In this contention appellants cite Bushey & Sons v. U. S., 2 Cir., 1949, 172 F.2d 447. In that case the vessel while being moored, was damaged by the wash from a ship alongside undertaking a dock trial. It was found that had a lookout

been stationed during the mooring operation, he would have observed the wash.

In the case at bar, the pilot of the tug stated that no lookout was needed. Clearly, there was no showing that if there had been a lookout, the accident would have been in any way prevented.

The judgment and final decree are affirmed.