Robert J. TALIK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19200.

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1965.

Rehearing Denied Feb. 3, 1965.

Lawrence P. D'Antonio, Johnson, Darrow, D'Antonio, Hayes & Morales, Tucson, Ariz., for appellant.

C. A. Muecke, U. S. Atty., John E. Lindberg, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and KOELSCH, Circuit Judges.

MADDEN, Judge:

In the United States District Court for the District of Arizona, the appellant was tried before a jury and found guilty as charged in all three counts of a three-count indictment. The indictment was for wilfully attempting to evade federal income taxes of himself and his wife for the years 1956, 1957 and 1958, in violation of section 7201 of title 26 of the United States Code. The district court entered judgment upon the verdict of guilty, and sentenced the appellant to imprisonment for eight months. This court has jurisdiction of the appeal under section 1291 of Title 28 of the United States Code.

█ The Government's method of proving that the appellant's taxable income was larger than that which he reported on his income tax returns for the years in question was the "net worth" method. This method, of course, consists in showing that the net worth, on a cost basis, of the assets which a taxpayer owned at the end of a taxable year is greater than the net worth at the beginning of the year, and then adding to the difference the non-tax-deductible expenditures of the taxpayer made during the year. The sum of these two figures is treated as taxable income unless, by gift, devise, inheritance or other non-taxable acquisition, the taxpayer's net worth has been increased during the year.

At the trial the Government presented evidence purporting to prove substantial increases in the appellant's net worth during each of the years in question. The appellant presented no evidence at all. He does, however, take strenuous exception to the propriety of some of the Government's evidence, and to the conclusions which the jury and the district court drew from it.

██ In determining whether there has been, in a taxable year, an increase in net worth, the net worth at the end of the preceding taxable year is the starting figure. The Government's computation credited the appellant with a net worth of $48,694.52 on December 31, 1955. From that starting figure, the Government's computation of an increase in net worth during the year 1956 was made. The $48,694.52 figure included, along with various other assets, $18,523.81 in bank deposit accounts. It also included $2,429.02 of "cash on hand." The Government's expert who made up, from all the evidence in the whole case presented by the other Government witnesses, a brief summation, and who testified from that summation, stated that there was no evidence in the case to support a figure of $2,429.02 of cash on hand; that the figure was merely an assumption on his part; that he had made the assumption because there was no evidence of cash on hand at the end of 1955; that there was evidence of cash on hand of $2,429.02 at the end of 1956, of $961.89 at the end of 1957, and of $1,403.09 at the end of 1958; there was testimony by the appellant's accountant, based upon written communications to him from the appellant, that the cash on hand figures for the ends of the years 1956, 1957 and 1958 were as recited above, and that "these figures are reasonable and they are within what would be reported by Mr. Talik." The ac-

countant had no figure for the end of 1955. The Government's expert witness assumed, in the absence of any evidence to the contrary, that the cash on hand at the end of 1955 was no more than the highest figure in any of the three following years, and he used that highest figure, the one for the end of 1956, in his computation. If the figure was too high, that was to the advantage of the appellant, since it reduced the amount by which his net worth increased in 1956. We think it was necessary for the Government's witness to make some inference, in the circumstances, and that the inference which he made was not unfair to the appellant.

The Government presented evidence of a "likely source" [1] of the money which increased the assets of the appellant during the years in question, viz., the restaurant business of the appellant. It showed that the appellant kept his books and records in such a manner that they could not be subjected to verification.[2] It showed that the only explanation given by the appellant during the investigation of his tax affairs for the increase in his net worth was a false explanation which included an attempt by him to induce a relative to alter a note owing by the relative to the appellant from $3,000 to $30,000.

The fact that the income tax returns involved in this case were joint returns of appellant and his wife rather than returns of the appellant alone requires some discussion in this opinion. The returns for the years 1956 and 1957 were joint returns of the appellant and his then wife, Marie Talik. Marie Talik died in 1958 and in that year the appellant married Gwen Talik. The tax return for 1958 was a joint return of the appellant and Gwen Talik. The appellant complains that the summation by the Government's expert, hereinbefore discussed, was headed, "Robert Talik," rather than, "Robert Talik, Marie Talik and Gwen Talik." The appellant's point is

that in determining the assets at the beginning of each tax year it would be necessary, since these were joint returns, to include, along with the assets of Robert Talik, those of Marie Talik at the beginning of the years 1956 and 1957, and of Gwen Talik at the beginning of the year 1958. The expert witness explained his use of the name of Robert Talik alone as the heading of his summation on the ground that this was Robert Talik's lawsuit, in which his wives were not involved. That explanation was satisfactory to the district court and the summation remained in that form. The substantive question, of course, is whether the summation in fact took account of the assets, if any, owned by Marie Talik and Gwen Talik at the beginning of the taxable years in which they were included in the returns.

■■ As we have said, the appellant presented no evidence at all. The Government evidence of assets at the end of the year 1955 (the beginning of 1956) included $18,523.81 on deposit in joint bank accounts in the names of appellant and Marie Talik. Thus those starting assets of Marie Talik were included in the computation. If there were others, there was no evidence of them and no leads had been given as to where to look for them. We can see no reason for hypothesizing them out of nothing. To require the Government, without leads furnished by the taxpayer, to negate every possible source of non-taxable income would be to require the impossible. Holland v. United States, supra, 348 U.S. at p. 138, 75 S.Ct. 127; Olender v. United States, CA9, 237 F.2d 859, 865; Vloutis v. United States, CA5, 219 F.2d 782, 791.

Marie Talik died on April 15, 1958. The appellant was the administrator of her estate, which consisted only of her community property interest in the equity which she and appellant had in their residence. Her interest was appraised, in the probate proceedings, at $3,338.13. That interest passed to the

1. Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150.

2. United States v. Calderon, 348 U.S. 160, 166, 75 S.Ct. 186, 99 L.Ed. 202.

appellant, and was treated, in the Government's accounting in this case, as a non-taxable acquisition of the appellant.

Gwen Talik became the appellant's wife in 1958. She had been a waitress in the appellant's restaurant before their marriage. If she, at their marriage, brought in assets which were present in the net worth of the appellant and herself at the end of 1958, and which, therefore, should not be counted as taxable income in 1958, there was no evidence of that fact at the trial, and no lead had been given which pointed toward such a fact. The evidence did show that all of the money which went into the joint bank account of the appellant and Gwen, after their marriage and the inclusion of her name in the account, was deposited by the appellant.

A large item which the Government's expert allocated in his computation as an asset to be taken into account in determining whether or not there had been an increase in net worth in 1958 was a savings and loan association account in the amount of $40,340.63, a joint account of appellant and his daughter, Sharon Talik, then ten years old. It was opened on April 11, 1958, by a deposit of $5,485.11, which was on that day transferred from another account containing a balance of that exact amount, which other account was in the name of Robert and Marie Talik. Also on April 11, 1958, $18,989.93 was deposited in the Robert and Sharon account. That money had been withdrawn on that day from a joint account of "Robert or Marie" Talik, in another savings and loan association. During the rest of the year 1958, further deposits were made in the Robert and Sharon savings account, bringing the balance at the end of 1958 to a total amount of $40,340.63.

The appellant urges that it was improper for the Government to count in the $40,340.63 as relevant to the 1958 tax return of the appellant, without determining a starting figure for the child Sharon's interest in the account. In his testimony, the Government's expert justified his inclusion of the entire amount in the assets of the appellant by saying that either the joint account belonged to the appellant, in which case it was properly includible in his assets, or that whatever part of it belonged to Sharon had been given to her by her parents, and would be a personal expenditure by them which would be added to the year's increase in assets in computing taxable income by the net worth method.

The evidence does show, as to the opening day deposits of $5,485.11 and $18,989.93 in the Robert and Sharon account, that the money came from the child's parents. We need not suppose that she purchased her interest in the account rather than receiving it as a gift from her parents. As to the additional deposits in the account after April 11 and down to December 31, 1958, there is no evidence as to where they came from. The appellant furnished no lead to the Government's investigators as to any source for this money other than himself. It would have been extraordinary for any donor to the child, other than the father, to have put the child's gift into an account from which the father could have drawn it out and, so far as appears, lawfully used it as his own. We think that, upon either of the alternative theories presented by the Government's expert, the $40,340.63 in the Robert and Sharon Talik joint account was properly taken into account in his computation.

It was permissible for the Government's expert to infer that when Kautenberger received a loan of $6,000 by a check from a broker who was in the mortgage loan business and gave his note for $6,000 to Robert and Marie Talik, the money for the loan to Kautenberger had been furnished to the broker by the Taliks.

The appellant complains of some instructions given by the district court, and of its failure to give other instructions requested by the appellant. We find no error in regard to instructions.

The judgment of the district court is affirmed.