UNITED STATES of America

v.

William S. TERRELL, a/k/a James Ter-
rell and Goldfinger, Defendant.

No. 74 Cr. 1058.

United States District Court,
S. D. New York.

Feb. 20, 1975.

Paul J. Curran, U. S. Atty., S.D.N.Y., New York City, for United States; Steven A. Schatten, Asst. U. S. Atty., of counsel.

Nancy Rosner, New York City, for defendant.

## OPINION

### FINDINGS OF FACT

EDWARD WEINFELD, District Judge.

The defendant, William S. Terrell, is charged with willful evasion of his individual income taxes for the years 1968, 1969 and 1970, under counts 1, 3 and 5, respectively, in violation of 26 U.S.C., section 7201.

The tax evasion charges are based upon a claim that in each year the defendant received substantial taxable income, knew that taxes were due thereon, and that his failure to file returns was deliberate, intentional and with the unlawful purpose of evading the payment of taxes due.

The indictment further charges that with respect to each of the years 1968, 1969 and 1970, the defendant willfully and knowingly failed to file tax returns, counts 2, 4, and 6, respectively, in violation of 26 U.S.C., section 7203. Thus as to each year the defendant is charged with the lesser included offense under section 7203.

The government urges that upon the totality of evidence it has fully sustained its burden of proof beyond a reasonable doubt as to the essential elements under counts 1, 3 and 5, the willful tax evasion counts: (1) that the defendant received substantial taxable income upon which substantial federal income tax was due and owing from the defendant for the year in question; (2) that the defendant made an attempt to evade or defeat the tax due; and (3) that he did so willfully.

The government contends that in each of the tax years the defendant had substantial income derived from extensive illicit narcotic activities. The evidence received on this subject was limited strictly to the issue of whether or not the defendant had a source of taxable income during this period.

I

■ As to this first element, the government has met its burden that the defendant received substantial income as a result of his activities as a narcotics distributor. This was abundantly established by the defendant's admission to James Nauwens, a member of the Joint Task Force, that his largest income from narcotics activities was in the year 1969, when he made as much as $60,000 a day for about a four-month period. The defendant also acknowledged that he was good for more than $100,000 a week from a narcotics partnership operation in Detroit, Michigan. There was no evidence to impugn the integrity or the reliability of these admissions made by the defendant after he was fully advised of his constitutional rights.[1]

■ In addition, Ferdinand Hunt testified that he made deliveries of half kilo and kilogram packages of narcotics for the defendant, for which he picked up $18–20,000 for each delivery, following which he left the moneys at designated premises. Hunt's testimony was received under a grant of immunity. He sought at this trial to limit his services with the defendant up to the year 1967 in contrast with his sworn testimony at another trial previously conducted in this district in which Hunt was a defendant. Hunt then testified that his dealings with the defendant took place from 1967 through 1969. It was evident to this court, based upon Hunt's demeanor, that he was trimming his testimony by dating his activities with the defendant prior to the income tax years at issue in an effort to help the defendant. However, his prior sworn trial testimony may be and is considered affirmative evidence.[2]

1. Defendant argues that there is no independent evidence corroborating his admissions to Agent Nauwens as required by Smith v. United States, 348 U.S. 147, 155, 75 S.Ct. 194, 99 L.Ed. 192 (1954). The independent evidence, however, need only establish either that the admissions were reliable or that the crime charged was in fact committed. United States v. Marcus, 401 F.2d 563, 565 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969); United States v. Pawlak, 352 F.Supp. 794, 797 (S.D.N.Y.1972). As

indicated later, in addition to Hunt's corroborative testimony, the record contains substantial independent evidence that the defendant had taxable income in these years, thus corroborating his admissions. United States v. Smith, 348 U.S. at 157, 75 S.Ct. 194; United States v. Calderon, 348 U.S. 160, 166–67, 75 S.Ct. 186, 99 L.Ed. 202 (1954).

2. United States v. Klein, 488 F.2d 481 (2d Cir. 1974); United States v. Pfingst, 477 F.2d 177, 197–98 (2d Cir.), cert. denied, 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400

■ Entirely apart from the foregoing, as already noted, the defendant admitted that the largest income derived from his narcotics dealings was in the year 1969. This rationally permits an inference that his narcotics activities existed for a reasonable time both before and after that date, absent a showing of material change in circumstances, and none has been shown to exist.[3] An inference that defendant had income from narcotics dealings in 1968 and 1970, as well as in the year 1969, based upon his admission to Agent Nauwens, is warranted from his similar course of conduct in 1968 and 1970, discussed hereafter—large cash expenditures; continuous purchases of cars coupled with defendant's statements to Nauwens that he bought cars frequently to frustrate attempts by government agents at surveillance of his activities; the use of sham corporations and individuals as conduits for transactions in an effort to cover up that he was the true party in interest; and evidence that in 1968 and 1970, as in 1969, the defendant had no probable source of any other income except through his narcotics activities.

To further support its claim, the government relies upon the specific cash expenditure method to demonstrate that in each of the tax years the defendant expended, directly or through nominees, substantial sums for the purchase of homes, improvements on one of them, and the purchase of expensive cars, and that these expenditures indicate that defendant had taxable income in these years. In support of this contention, the government effectively negated that prior to 1968, the defendant had sufficient funds or access to nontaxable funds to account for those expenditures.

The evidence establishes that the last time the defendant filed a personal income tax return was in the year 1960, when he obtained a refund of $84.30; that for the years 1961 through 1966 he filed no personal income tax returns with the Manhattan District of the Internal Revenue Service; and that for the years 1967 through 1970 he did not file any personal income tax return anywhere, and that the Social Security records show no earnings of the defendant beyond the first quarter of 1963. In 1967, defendant opened a bank account, the balance of which never exceeded $175. An investigation by an Internal Revenue Agent into various banks in the area of the defendant's residences and business addresses revealed no other bank accounts in the name of the defendant, Zula Terrell (his mother), Frances Terrell (his wife), Olive Terrell, Olive McDonald, Teasla Taxi or Terrell Productions.[4]

The evidence also establishes that for 1966–1971 Frances Terrell, his wife, and Olive McDonald, referred to hereafter, whom he at one time described as a secretary and at another as a dependent, filed no personal income tax returns with the Brooklyn, Manhattan and Newark District Offices of the Internal Revenue Service. In a 1970 loan application the defendant represented that Frances Terrell was a housewife with no income.

In 1966 the defendant was arrested on two separate State charges and held in bail, which was reduced to $15,000 on each charge. He did not post bail for more than four months and remained in

---

(1973); United States v. Briggs, 457 F.2d 908 (2d Cir.), cert. denied, 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972); United States v. DeSisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

3. McFarland v. Gregory, 425 F.2d 443 (2d Cir. 1970); Amalgamated Clothing Workers of America v. NLRB, 345 F.2d 264 (2d Cir. 1965); Russell, Poling & Co. v. Conners Standard Marine Corp., 252 F.2d 167 (2d Cir. 1958); 2 Wigmore on Evidence § 435 (3d ed. 1940). See, e. g., Government of Virgin Islands v. Williams, 438 F.2d 1085 (3d Cir.), cert. denied, 404 U.S. 881, 92 S.Ct. 217, 30 L.Ed.2d 161 (1971).

4. See United States v. Penosi, 452 F.2d 217 (5th Cir. 1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1495, 31 L.Ed.2d 795 (1972).

detention until bail was furnished upon collateral put up by a friend of his mother whose help had been solicited by the mother,[5] and others.

The defendant was a lessee of store premises in the Bronx, New York, and a dispossess proceeding for nonpayment of three months' rent totalling $375 was commenced in July 1967 and a judgment by default was entered on September 8, 1967, awarding possession of the premises to the landlord. The inference is permissible that in 1966 the defendant was without funds to put up the bail required to effect his release or to pay the premium for bonds, and further that in September 1967 he was without funds to pay the modest three months rent of $375 for the store premises.

■ There is no contention that the defendant furnished any leads to the government as to any possible nontaxable source of income to account for his expenditures from 1968 through 1970.[6] Here the government proved a likely source of income. It was not required to negate all possible sources of nontaxable income,[7] particularly when defendant himself furnished no leads to the government, a matter within his peculiar knowledge.[8]

■ Following the defendant's dispossess in early September 1967, he thereafter commenced to purchase expensive automobiles to the end of the year. Upon the evidence it appears likely that it was at or about this period that defendant commenced his illicit narcotics activities and that the income derived therefrom accounts for the purchase of those cars. The court finds that as of December 31, 1967 the defendant did not have sufficient funds on hand to make the very substantial expenditures totalling almost $300,000 in the tax years in question.

## YEAR 1968—COUNT 1

■■ In the year 1968 the defendant purchased seven automobiles, six Cadillacs and a Lincoln Continental, for an approximate net cost of $37,000.[9] These purchases were made by the defendant either in his own name or in the name of Terrell Productions, Inc., a corporation dominated, controlled and wholly owned by the defendant, of which he described himself as "president and principal . . . ." The evidence warrants a finding that Terrell Productions, Inc., as well as Teasla Taxi, Inc., also used by the defendant, were sham corporations used by him to cover up or

---

5. *See* United States v. Calles, 482 F.2d 1155, 1159 (5th Cir. 1973).

6. *See* Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

7. United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958); United States v. Calles, 482 F.2d 1155, 1159 (5th Cir. 1973).

8. Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954). *Cf.* Feichtmeir v. United States, 389 F.2d 498, 503 (9th Cir. 1968); Talik v. United States, 340 F.2d 138, 140 (9th Cir. 1965); Kampmeyer v. United States, 227 F.2d 313 (8th Cir. 1955).

9. During the course of the trial, defense counsel made objections when a witness called by the prosecution could not make a positive identification of the defendant as the person with whom he dealt, but could only say that the defendant "looks like" or

"resembles" the person. Passing for the moment the fact that some of these witnesses produced documents containing defendant's signature (a matter not disputed by the defense), there is no rule of law that identifications must be positive beyond any possible doubt. The sufficiency of an identification is generally for the trier of fact and testimony that the defendant "looks like" or "resembles" the person about whom the witness is testifying may be sufficient when considered with other evidence. United States v. Lewis, 485 F.2d 236, 237 (5th Cir. 1973), cert. denied, 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974); United States v. Scarpellino, 431 F.2d 475, 477 (8th Cir. 1970); United States v. Johnson, 427 F.2d 957, 961 (5th Cir. 1970); Smith v. United States, 358 F.2d 695 (5th Cir.), cert. denied, 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966); United States v. Kelley, 334 F.Supp. 435, 436 (S.D.N.Y.1971), aff'd without opinion, 471 F.2d 647 (2d Cir. 1973).

conceal that he was the real party in interest in various transactions and that he was the individual making the payments for various acquisitions. In the instance of Teasla Taxi, Inc., he acknowledged he was the owner of a fleet of thirty cars operated under its name. The payment for cars was generally made in cash. While the defendant did not personally hand over cash for a number of these transactions, the evidence is overwhelming that he was the source of the funds and the purchaser of the cars. He ordered the cars, signed various purchase orders for the cars, had control of them, and acquired them for the purpose of throwing off surveillance agents.

 In all, the evidence establishes by the required degree of proof that for the year 1968 defendant received substantial income, approximately $35,000, upon which substantial taxes were due.

### YEAR 1969—COUNT 3

In August 1969, the defendant purchased a home at 445 North Woodland Street, Englewood, New Jersey, the title of which was taken in his name and one Olive Terrell.[10] The purchase was made by defendant through a George Brooks, a real estate broker, and the seller was told that all the money would be paid through the broker. Upon the signing of the contract the seller received from Brooks $20,000 cash in 100 and fifty dollar bills on account of the purchase price. The seller testified before the grand jury that at the closing of title he received approximately a $10,000 cash balance from the defendant himself, but at this trial he testified that this sum came from Brooks. However, the seller's testimony leaves no doubt that the defendant was the purchaser of the home and that he supplied the cash payments of $30,000, using Brooks as the intermediary. The defendant was

present on each occasion, that is, at the contract and title closing, when the cash payments were made. The suggestion by defense counsel that Brooks may have made a gift of that sum flies in the face of substantial evidence. The seller's testimony is explicit that "Mr. Terrell bought the house through Mr. Brooks and all the transactions of the money was done through Mr. Brooks."

Following the purchase of this home substantial alterations and improvements were made totalling $85,173 from October 1969 through August 1970, of which $38,490 was expended in 1969 and the balance in 1970. The contract for these improvements was signed by defendant as "owner." Of the total paid in 1969 on account of the improvements the contractor received $28,000 by checks from the George Brooks Realty Company, Inc., which acted on behalf of the defendant in disbursing the funds. Between 85 and 90% of the balance of $10,490 was paid directly by the defendant in cash to the contractor. A further expenditure of $2,000 was made for the installation of a TV surveillance and alarm system in the home.

In that same year, ten Cadillac cars were purchased at a total cost of $87,153. Two of these cars were customized at an additional cost of $9,080. In these instances, as in the prior years, the defendant was the negotiator for, and the purchaser of, the cars, title to which in nine instances was taken in the name of Teasla Taxi, Inc., the contracts for which, in six instances, were signed by him as an officer. Title to the other car was taken in the name of Sally Christopher, but the salesman for this transaction testified that all but $500 of the purchase price was paid for by Teasla Taxi. Payments for these ten purchases were made in cash. Two payments on account of eight cars were made in the amounts of $29,393 and

10. The record is not clear whether Olive Terrell was defendant's wife at this time or at any other time. A Frances Terrell, acknowledged to be the defendant's wife, was named as a grantee with respect to the purchase of a second home, referred to under 1970 count 5.

$20,725 in twenty dollar bills or less; hours were required to count the currency.

In sum, the total expenditures by the defendant for the purchase of a home, improvements thereon and the purchase of ten cars, totalling $168,000, together with the direct evidence that the defendant had sizeable income from his narcotics activities, establish that in 1969 the defendant received substantial income on which substantial taxes were due.

## YEAR 1970—COUNT 5

In 1970, payments were made in the amount of $46,683 on the balance due for the improvements of defendant's home at 445 North Woodland Street. Of this amount, $44,683 was paid in cash and the defendant personally paid 85 to 90% of this amount to the contractor.

In January of 1970, within four months after he acquired the North Woodland Street home in Englewood, New Jersey, the defendant bought a second home at 224 Tenafly Road, Englewood, New Jersey, and took title in his name and his wife Frances. He expended therefor $18,000 over and above the mortgages and he and his wife executed a purchase money mortgage. George Brooks Realty Company was also the defendant's agent in this purchase. Checks from Brooks Realty Company were used to make mortgage payments in 1970.

In February of this year, the defendant purchased in his individual name a Cadillac Eldorado demonstrator car for $11,500. The same company from whom he purchased this car also customized four other cars, title to which was in Teasla Taxi. The defendant personally directed how the cars were to be customized. A total cash payment of $20,000 was made for the demonstrator car and the customizing, delivered in a paper bag in denominations of primarily fives, tens and twenty-dollar bills. This cash payment was made in response to a phone call to the defendant after a check drawn on the joint account of William and Olive Terrell of 445 North Woodland, signed by Olive Terrell, was returned for insufficient funds. There is no doubt that the $20,000 came from the defendant.

The evidence abundantly establishes that in 1970 the defendant received substantial income in the amount of approximately $87,000 upon which substantial taxes were due.

As to the third and fifth counts, an additional finding is made. Assuming, as defendant argues, that the evidence is insufficient to establish that payments made by or in the name of other parties cannot be attributed to him, the evidence is beyond dispute that in the years 1969 and 1970 the defendant personally made 85–90% of the cash payments to the contractor for the balance of $54,000 (over and above the check payments by George Brooks Realty Company) for improvements on his home at 445 North Woodland Street. On this evidence alone, not considering other cash payments made directly and personally by defendant for cars purchased in his individual name, the court finds that in each of the years 1969 and 1970 the defendant had substantial income on which substantial taxes were due.

## II

The government has also established beyond a reasonable doubt the second element of the offense charged under 26 U.S.C., section 7201, in counts 1, 3 and 5, namely, that for each of the years 1968, 1969 and 1970, the defendant attempted to evade and defeat the payment of taxes due. His failure to file returns in any of these years, when he had substantial income and substantial taxes were due, was deliberate, purposeful and intended to evade payment of the taxes due. The record further establishes beyond any question that defendant attempted to conceal his income in each year and evade payment

of taxes due by purchasing automobiles in the names of sham corporations; by making payment in major transactions with large sums of cash in small denominations; by purposely avoiding making records in his own name in his expenditures; by using other persons to execute transactions and make payments on his behalf; and by falsely concealing the source and amount of his income as he did in a loan application in 1970.

This calculated conduct, repeatedly engaged in, was an attempt to mislead and conceal his income and to evade payment of substantial taxes due.[11]

### III

As to the third element of the offense, that the defendant *willfully* attempted to evade the payment of taxes, the court finds overwhelming evidence of willful intent. The defendant was fully aware of his duty to pay taxes on his income and he deliberately attempted to evade payment thereof.[12]

The defendant's willful intent is inferred from his use of large sums of cash in the major portion of his transactions,[13] his practice of placing his assets in the names of other persons,[14] his use of sham corporations,[15] and by his conduct in avoiding making records

usual in transactions of the kind in which he was engaged.[16] Further evidence of his willful intent is found in the fact that he did file a tax return in the year 1960, thus demonstrating his awareness of his duty to pay taxes, and in his loan application of January 1970, wherein he falsely stated that on his income of $18,600 as a gas station mechanic he owed $2,300 in federal and state taxes for the past twelve months. What the Supreme Court said in Spies v. United States [17] is particularly appropriate here: "If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."

The court therefore finds that the government has established beyond a reasonable doubt all the essential elements of the offense charged under 26 U.S.C. section 7201, and finds the defendant guilty on each of counts 1, 3 and 5. In view of these findings, it is unnecessary to reach the lesser included offenses charged under 26 U.S.C., section 7203, in counts 2, 4 and 6.[18] However, were the court called upon to decide these counts, the evidence overwhelmingly establishes that the government also has sustained its burden of proof as to

11. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

12. United States v. Berger, 325 F.Supp. 1297 (S.D.N.Y.), aff'd, 456 F.2d 1349 (2d Cir. 1971), cert. denied, 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972).

13. Canaday v. United States, 354 F.2d 849, 855 (8th Cir. 1966); United States v. Holovachka, 314 F.2d 345, 358 (7th Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1695, 10 L. Ed.2d 1033 (1963).

14. United States v. Calles, 482 F.2d 1155 (5th Cir. 1973); United States v. Holovachka, 314 F.2d 345 (7th Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963); United States v. Schipani, 293 F. Supp. 156 (E.D.N.Y.1968), aff'd, 414 F.2d 1262 (2d Cir. 1969), cert. denied, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970).

15. United States v. Holovachka, 314 F.2d 345, 358 (7th Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963);

Remmer v. United States, 205 F.2d 277 (9th Cir. 1953), vacated on other grounds 347 U. S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), reaff'd, 222 F.2d 720 (9th Cir.), cert. granted, 350 U.S. 820, 76 S.Ct. 63, 100 L.Ed. 733 (1955). Cf. United States v. Rifkin, 451 F. 2d 1149 (2d Cir. 1971).

16. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

17. 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

18. Sansone v. United States, 380 U.S. 343, 349, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); United States v. Slutksy, 487 F.2d 832, 845 (2d Cir. 1973), cert. denied, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); United States v. Newman, 468 F.2d 791, 796 (5th Cir. 1972), cert. denied, 411 U.S. 905, 93 S. Ct. 1527, 36 L.Ed.2d 194 (1973); United States v. Rosenthal, 454 F.2d 1252, 1255 n. 2 (2d Cir.), cert. denied, 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972).

counts 2, 4 and 6 and that a verdict of guilty on each is warranted.

The foregoing shall constitute the Court's Findings under Rule 23(c) of the Federal Rules of Criminal Procedure.